Cooke, J.
We hold that a conflict of interest occurs when a town board member acquires premises, located in the town in which he serves, at a county tax sale.
Respondents, Gustav and Carmen Eichhorst, were owners in fee of a house and slightly more than six acres of land in the Town of Victor, County of Ontario. On July 12, 1972, the parcel was sold for $1,307.63 by the County of Ontario for unpaid taxes levied against it for the years 1970 and 1971. The tax sale certificates were purchased from the county treasurer by petitioner’s son who assigned them to petitioner Charles G. Rose on March 22, 1973. Three years after the sale, on July 15, 1975, the county treasurer executed a tax deed covering the premises to petitioner. In August, 1975, petitioner commenced summary proceedings to dispossess respondents pursuant to subdivision 4 of section 713 of the Real Property Actions and Proceedings Law.
The Appellate Division, affirming a judgment of County Court which awarded petitioner possession of the subject premises, held that there was no prohibited conflict of interest under section 801 of the General Municipal Law because the structure of the Town Law and the Real Property Tax Law is such that petitioner was at all times dealing with the County of Ontario, rather than the Town of Victor, in acquiring said premises. We reverse.
Although a conflict of interest was prohibited at common law (see People ex rel. Ryan v Green, 58 NY 295), the concept has been codified for sometime in statutes. The most recent enactment brings together provisions formerly in various laws into one statute, viz.: "Except as provided in section eight hundred two of this chapter, (1) no municipal officer or employee shall have an interest in any contract with the municipality of which he is an officer or employee, when such officer or employee, individually or as a member of a board, has the power or duty to (a) negotiate, prepare, authorize or approve the contract or authorize or approve payment thereunder (b) audit bills or claims under the contract, or (c) appoint an officer or employee who has any of the powers or duties set forth above” (General Municipal Law, § 801, subd 1). The exceptions in section 802 are not applicable here, but several definitions in section 800 merit attention:
*94 " 'Contract’ means any claim, account or demand against or agreement with a municipality, express or implied” (subd 2).
" 'Interest’ means a direct or indirect pecuniary or material benefit accruing to a municipal officer or employee as the result of a contract with the municipality which such officer or employee serves” (subd 3).
" 'Municipal officer or employee’ means an officer or employee of a municipality, whether paid or unpaid, including members of any administrative board, commission or other agency thereof and in the case of a county, shall be deemed to also include any officer or employee paid from county funds” (subd 5).
It is conceded that a county officer may not acquire property from the county which he serves at or after a county tax sale (see 15 Opns St Comp, 1959, p 397). Similarly, it is recognized that a prohibited conflict of interest occurs when a village officer purchases property located in the village in which he serves at a village tax sale (see 25 Opns St Comp, 1969, p 152). For the same reasons, a town board may not sell a town supervisor real property where its value exceeds $100 (see 29 Opns St Comp, 1973, p 132; see, also, General Municipal Law, § 802, subd 2, par f). The assertion is made, however, that here there was no contract with the municipality of which petitioner was an officer, and hence no conflict of interest. In other words, it is argued that since the county is acting on its own behalf, a town officer may purchase at a county tax sale. Although on the surface this argument appears dispositive, there is much more to the matter.
Counties and towns were originally political or governmental divisions of the State created for the purpose of carrying out State functions (Gaynor v Marohn, 268 NY 417, 422). A distinction has long been made between villages and cities, which are corporations organized by action of local inhabitants and limited by statute or charter, and towns and counties, which have been characterized as involuntary subdivisions of the State (Curtis v Eide, 19 AD2d 507, 508). Of course, there are similarities among all of these municipal corporations (see, generally, 39 NY Jur, Municipal Corporations, §§ 1-4). The significant aspect of this distinction is, however, that it shows the similar nature of counties and towns as municipal bodies and, as will be discussed, it lays the foundation for their interrelationship in the governmental function.
This relationship is manifested in the taxing mechanism *95 established by the Legislature. A town, being a creature of statute, may not act in excess of the powers conferred upon it by the Legislature (People v Scott, 26 NY2d 286, 289; Town Law, § 2). In the State-wide system, it is the town that has the duty to collect and receive all State, county and local taxes that may be levied on real property within its borders (see Town Law, §§ 36, 37). The collection of taxes, however, is only part of the interconnection between towns and counties in this respect. A brief description of the taxing network is necessary.
The process begins with the adoption of an annual budget by the town (see Town Law, § 109). This is presented to the board of supervisors of the county (see General Construction Law, § 13-b) which causes the amounts specified in the budget to be levied, assessed and raised by tax and assessment upon the real property of the town liable therefor, in accordance with the law for the levy of State and county taxes (Town Law, § 115). The county then levies the taxes for the county, entering the amount to be paid on each parcel on the assessment roll of each town (see Real Property Tax Law, § 900, subd 1). Annexed to the town’s assessment roll is a warrant from the county board of supervisors authorizing and directing the collecting officer of the town to collect the amounts listed on the roll (Real Property Tax Law, § 904, subd 1). Ultimately, the collecting officer of the town is required to make payment to the town supervisor of an amount equal to the sum levied for town purposes plus other amounts as required by law, and to pay the remainder to the county treasurer (§ 904, subd 2).
If the owner of the property refuses to pay the tax, the town collecting officer, after January 31 and after demand, may levy upon and cause to be sold at public auction any personal property in the county belonging to said owner (Real Property Tax Law, § 926, subd 2). If the tax is not satisfied in this manner, the collecting officer is required to make an account to the county treasurer of all taxes listed on the tax roll which remain due and unpaid, except for certain specified installments (§ 936, subd 1). Should the amount of taxes collected by the town tax collector be less than the sum levied for town purposes, the county must pay the town the difference (see Opns St Comp, 1976, No. 96).
At this point, the responsibility for collecting the delinquent tax shifts to the county (see Matter of Wadhams, 249 App Div 271; 19 Opns St Comp, 1963, p 385). The county, rather than *96 the town, holds a lien for the unpaid town taxes (see Opns St Comp, 1953, No. 6445). The county, but not the town, is authorized to collect the delinquent taxes (see Real Property Tax Law, arts 10, 11; see, generally, 58 NY Jur, Taxation, §§ 261-319).
It is asserted that the county treasurer in conducting a tax sale is seeking to collect sums owed to the county. While this is descriptive of the end result, it neglects to appreciate the process leading up to the sale. As noted, it is the town which initially seeks to collect the taxes, and it is the town collecting officer who may seek to satisfy the tax by levying on the personal property of the taxpayer. Of course, the discretion given to the town collecting officer, whether elected or appointed,[1] is not vested in the town board. Nevertheless, the town board, referred to as the most important part of town government (Fraser, Town Law for Town Officials [2d ed], § 4-1, p 401), is not a legal stranger to the collecting officer. To illustrate: the town board fixes the salary of the collecting officer, whether elected or appointed, and determines when same shall be payable (Town Law, § 27, subd 1); it designates the banks in which the collecting officer shall deposit all money coming into his or her hands by virtue of the office (see Town Law, § 64, subd 1); it may establish within applicable limitations a petty cash fund for the collecting officer (subd 1-a); and it fills vacancies in town offices (subd 5). The collecting officer is required to execute and file an undertaking in such form, in such sum and with such sureties as the town board shall direct and approve (see Town Law, §25). It is not disputed that petitioner was a member of the town board having such authority (see Town Law, § 60, subd 2).[2] The *97 statement in Town of Amherst v County of Erie (260 NY 361), that town tax collectors are not town officers but independent public officers and that they act directly for the county under a warrant issued by the county (p 370), indicates the joint efforts of the town and county in tax collection. In any event, such a public officer so considered and so acting for a county is under the statutory controls of the town board as outlined.
If a town had no connection with the collection of its taxes, the assertion sought to be made might be acceptable. But a court should not make such fine distinctions, least of all where matters involve questions of what is proper conduct for a municipal officer. To consider solely the procedure by which delinquent taxes are collected is to focus in on only one aspect of a larger and more complex picture. Of course, the county is not the town and the town is not the county, but our legal inquiry must not end there. In the greater scheme of things, the two municipalities have an overlap, if not identity, of interest.
The Legislature assigned different functions to the two municipalities. The towns, being more numerous, were assigned the initial duty to collect the taxes for themselves and the county. The county, receiving taxes from all the towns, was assigned the responsibility for the collection of delinquent taxes. Perhaps it was felt that the towns could not shoulder the burden of collection of delinquent taxes. Possibly there was concern that the towns would delay in enforcement, since only part of the amount collected is for the town. Whether the county is treated as an agent of the town or simply one of two participants in the same collection process, their close affiliation cannot be ignored.
This identity of interest, manifested in the legislative framework, can lead to but one conclusion—that there is a conflict of interest when a town board member acquires property in his town at a county tax sale. The contract of sale, though in form concerning only the county, by implication also involves the town, and as such is within the statutory contemplation (see General Municipal Law, § 800, subd [2]). The petitioner’s action, through his membership on the town board, in preparing the town budget and thus initiating the collection of the *98 taxes, must be considered as part of the approval and authorization culminating in the county tax sale (see § 801, subd [1]). From the other vantage point, as noted, there is the town board’s relationship with the town tax collecting officer (see, e.g., Town Law, §§ 25, 27, subd 1; § 64, subds 1, 1-a, 5). Petitioner’s official interest in these matters, when contrasted with his personal acquisition of respondents’ property, can only be described as conflicting. For these reasons, the sale is voidable (General Municipal Law, § 804).
Accordingly, the order of the Appellate Division should be reversed, with costs, and the petition dismissed.
Chief Judge Breitel and Judges Gabrielli, Jones and Fuchsberg concur with Judge Cooke; Judges Jasen and Wachtler dissent and vote to affirm on the memorandum at the Appellate Division (52 AD2d 747).
Order reversed, etc.

. The record does not reveal whether the Town of Victor is a first or second class town or the title of its collection officer. A footnote in appellant’s brief refers to Victor as a second class town. The 1970 population for the Town of Victor in the 1975 Legislative Manual is listed as 5,071 (p 1278). (See Town Law, §§ 10, 12.)
The office of collector exists in a town of the second class and is an elective position (Town Law, § 20, subd 1, par [b]). The town board of a second class town may abolish the office of collector by resolution and, if so accomplished, the powers and duties of a collector are taken over and performed by the town clerk of such town (Town Law, § 36, subd 1). A receiver of taxes and assessments is found in a town of the first class and is elective, except that the town board of such a town may adopt a resolution, subject to a permissive referendum, that such office shall be appointive in such town (Town Law, § 20, subd 1, par [a]; subd 6, par [e]).

. Neither is the town board unassociated with tax assessments, an element in arriving at the amount of taxes, since, among other things, the board may authorize the preparation or adoption of a tax map of all real property in its town for use by its *97 assessors (Real Property Tax Law, § 568) and it may employ experts to appraise real property therein for assistance of the assessors and to give expert testimony in any action or proceeding in connection with assessments of real property (Real Property Tax Law, § 572).