In the Matter of JAMES R. HARVEY, Appellant, v FRANCIS FINNICK, as Ontario County Treasurer, et al., Respondents. (Appeal Nos. 1 and 2.)

Fourth Department, July 9, 1982

**APPEARANCES OF COUNSEL**

*Max Cohen* for appellant.

*John W. Park, County Attorney,* for respondents.

*Robert Abrams, Attorney-General (Peter H. Schiff* of counsel), for State of New York, intervenor-respondent.

**OPINION OF THE COURT**

CALLAHAN, J.

At issue on this appeal is the constitutionality of section 183-a of the Judiciary Law[1] which defines a county's obli-

---

1. Section 183-a of the Judiciary Law states: "Notwithstanding any other provision of law, the district attorney of· each county having a population of more than five

gation to pay its District Attorney an annual compensation equivalent to that of the County Court Judge. Petitioner, James R. Harvey (Harvey), District Attorney of Ontario County, appeals from two judgments which dismissed his petitions to compel the County of Ontario (County) to pay him sums equivalent to the annual salary paid the Ontario County Court Judge retroactive to October 1, 1978. In dismissing Harvey's parity application, Special Term stated: "[T]he compensation provisions of section 183-a of the Judiciary Law which equate the salaries of certain District Attorneys to those of a County Court Judge lack a rational basis and must be declared unconstitutional. Therefore, the respondent county is not obliged to pay the petitioner in accordance with the salary provisions of that section and section 221-d of the Judiciary Law." (*Matter of Harvey v Finnick*, 111 Misc 2d 197, 205.)

The New York State Legislature in enacting section 183-a of the Judiciary Law, afforded a county legislature the option of designating the office of District Attorney as a full-time position at an annual salary equivalent to that of the County Judge in the county in which the District Attorney is elected (L 1972, ch 946, amd by L 1974, ch 1049, § 3). On April 17, 1975, the Board of Supervisors of the County of Ontario adopted Local Law No. 2, and pursuant to subdivision 8 of section 700[2] of the County Law

hundred thousand according to the last federal census, exclusive of the counties of New York, Bronx, Kings, Queens and Richmond, shall receive an annual salary equivalent to that of a justice of the state supreme court together with such additional compensation as the legislative body of such county may provide by local law. Further, that the district attorney of each county having a population of more than one hundred thousand and less than five hundred thousand according to the last federal census, exclusive of the county of Richmond, and the district attorney of any county, the board of supervisors of which has designated such office as a full-time position pursuant to subdivision eight of section seven hundred of the county law, shall receive an annual salary equivalent to that of county judge in the county in which the district attorney is elected or appointed, together with such additional compensation as the legislative body of such county may provide by local law."

**2.** Subdivision 8 of section 700 of the County Law states: "The district attorney of a county having a population of more than one hundred thousand according to the last federal census and the district attorney of Essex county and any county having a population of more than forty thousand but less than one hundred thousand according to the last federal census, the board of supervisors of which has designated such office as a full-time position, shall give his whole time to his duties and shall not engage in the

designated the office of District Attorney as a full-time position with an annual salary of $36,000 effective January 1, 1976. The salary fixed was equivalent to the compensation then authorized for an Ontario County Court Judge. In November, 1975, petitioner was elected Ontario County's first full-time District Attorney and commenced his three-year term on January 1, 1976. He was re-elected to a three-year term in November, 1978 and in November, 1981 was elected to a four-year term expiring December 31, 1985. The State Legislature enacted section 221-d of the Judiciary Law, effective April 6, 1979, establishing the annual salary of County Court Judges with first salary increase retroactive to October 1, 1978 (L 1979, ch 55, § 2). Upon the enactment of section 221-d of the Judiciary Law, Harvey requested the County to pay him a salary in accordance with the provisions of the statutes (Judiciary Law, §§ 183-a, 221-d). The County refused, contending that the District Attorney was a State officer and that section 7 of article XIII of the New York State Constitution prohibits compensation paid a State officer to be increased during the term for which he shall have been elected.

At the outset, it should be noted that there is a strong presumption that the acts of the Legislature are constitutional. While this presumption is rebuttable, unconstitutionality must be demonstrated beyond a reasonable doubt and only as a last resort should courts strike down legislation on the ground of unconstitutionality (*Lighthouse Shores v Town of Islip,* 41 NY2d 7, 11). Since this statute is being challenged on nonprocedural grounds, it should be upheld if there is some fair, just and reasonable connection between the statute and the promotion of the health, comfort and welfare of society (*Patterson v Carey,* 41 NY2d 714, 720-721). Special Term concluded that "[w]hile the compensation plan of paying certain District Attorneys the same as County Court Judges may have been reasonable when section 183-a of the Judiciary Law was passed, subsequent changes in the court structure have rendered

practice of law, act as an arbitrator, referee or compensated mediator in any action or proceeding or matter or engage in the conduct of any other profession or business which interferes with the performance of his duties as district attorney."

that compensation plan unreasonable" (*Matter of Harvey v Finnick,* 111 Misc 2d 197, 202, *supra*). The test to be applied in legislation of this nature is whether (1) it is reasonable in relation to its subject matter and (2) is adopted in the interest of the State (*Niagara Recycling v Town of Niagara,* 83 AD2d 316, 326).

The legislative history of section 183-a of the Judiciary Law lends ample support to its reasonableness. It was promulgated to remove the salary differential of the District Attorney from local political considerations, to maintain the security and independence of District Attorneys, and to assure that persons of high standing and integrity remain in their position (Governor's bill jacket, L 1972, ch 946, pp 8-9). The Legislature recognized that it was not equitable to require full-time District Attorneys to forego private practice while at the same time having their salaries frozen at inadequate levels (Governor's bill jacket, at p 10). By providing minimum salaries equivalent to Judges of the County Court, the office of District Attorney would attract the best available attorneys (Governor's bill jacket, at p 22), and diminish the exodus of District Attorneys to the County Court Bench. Section 183-a directly promotes this interest in an equitable and reasonable manner. In our view, the legislation passes the reasonableness test, and the court may not substitute its judgment for the method chosen by the Legislature (*Hotel Dorset Co. v Trust for Cultural Resources of City of N.Y.,* 46 NY2d 358, 370).

No one disputes that the State has a significant interest in maintaining the integrity and effectiveness of District Attorneys. The compensation requirement in section 183-a is reasonably connected to the State's interest in maintaining competent District Attorneys, and, therefore, the constitutional challenge must fail.

In its memorandum decision, Special Term also concluded that a District Attorney is a State officer and that any increases in his annual salary during his term of office would violate section 7 of article XIII of the New York State Constitution. While the Constitution does not define the term "state officer", it is apparent that Special Term found that inasmuch as the District Attorney is "named" in section 13 of article XIII of the Constitution, that such

inclusion "in this Constitution" designates the District Attorney as a "state officer" (*Matter of Harvey v Finnick*, 111 Misc 2d 197, 205, *supra*). Recently, the Second Department, in denying a similar application by the Dutchess County District Attorney held that "payment to petitioner of his claim for accrued salary and for an increase in salary, requested during his term of office, is prohibited by section 7 of article XIII of the New York State Constitution." (*Matter of King v Amodeo*, 87 AD2d 819, 820). We respectfully disagree and hold that District Attorneys are not State officers within the meaning of section 7 of article XIII of the New York State Constitution and the salary designated to be paid the respective District Attorneys in accordance with the appropriate provisions of the Judiciary Law is not in violation of the Constitution.

An interesting historical review of the origin of the title "District Attorney" and significantly the early reference to that title as a State officer is concisely chronicled by Chief Judge DESMOND in *Fisher v State of New York* (10 NY2d 60, 62) as follows: "Until early in the 19th century the prosecution of crime in this State was a duty of the Attorney-General, somewhat like the English system, and at that time the State was divided into districts in each of which there was a prosecutor, hence the name 'District Attorney' (see Report of 1938 Constitutional Convention Committee, Vol. VIII, p 352). Later, by statute, each county was given an appointed District Attorney (L. 1818, ch. 283; and see N.Y. Const. [1821], art. IV, § 9, providing for appointment by County Court). However, all that ended when the 1846 Constitution (see art. X, § 1) directed that the District Attorney should be chosen by the electors of the respective counties."

The general language of section 7 of article XIII originated in 1874 when section 9 of article X was adopted. Entitled "Compensation of constitutional officers", it provided: "No officer whose salary is fixed by the Constitution shall receive any additional compensation. Each of the other state officers named in the Constitution shall, during his continuance in office, receive a compensation, to be fixed by law, which shall not be increased or diminished during the term for which he shall have been elected or

appointed; nor shall he receive to his use any fees or perquisites of office or other compensation." At that time the salary of the Governor, Lieutenant Governor, Senators and members of the Assembly were fixed by the Constitution. All other salaries were subject to statutory regulations within the limitations prescribed by the Constitution (4 Lincoln, Constitutional History of New York, p 765). It is readily apparent that District Attorneys were among the "other state officers" referred to in section 9 (*Fellows v Mayor of City of N.Y.*, 8 Hun 484; 4 Lincoln, Constitutional History of New York, p 722). Obviously the District Attorney then was considered part of the State judicial system and subject to the provisions of section 9 of article X (see *Hanley v City of New York,* 250 App Div 552, affd 275 NY 482; *Albert v City of New York,* 250 App Div 555, affd 275 NY 484; 1979 Atty Gen [Inf Opns] 259-261).

The significance of the title, District Attorney, the responsibilities and local emphasis have evolved drastically since 1874. By 1892 the office of District Attorney had become elective and the District Attorney was included within the definition of a "local officer" contained in section 2 of the Public Officers Law. That section still provides that: "The term 'local officer' includes every other officer who is elected by the electors of a portion only of the state, every officer of a political subdivision or municipal corporation of the state, and every officer limited in the execution of his official functions to a portion only of the state * * * The office of a local officer is a local office." Therefore, the Legislature has provided specifically that a District Attorney is a local officer. We also find considerable support for this proposition in the County Law (see County Law, § 201, subd 1; §§ 400, 402, 403, 702, subd 1; § 825; *Drake v City of Rochester,* 96 Misc 2d 86, 95, affd 74 AD2d 996).

Logic also militates in favor of a local designation. A District Attorney is now elected by the people of one county only. His compensation is paid by one county only, and the exercise of his authority is limited to one county only (*Ritter v State of New York,* 283 App Div 833). These principles were recognized when the State was held not to be liable for damages resulting from an Assistant District

Attorney's unlawful actions (*Fisher v State of New York,* 10 NY2d 60, *supra*) because of the local character of the officer (*Whitmore v State of New York,* 55 AD2d 745, 746).

This rationale also is supported by subsequent amendments to the Constitution. In 1938 the home rule provisions now contained in article IX were adopted. Section 2 (subd [c], par [1]) of this article gives the county the authority to adopt local laws regulating "[t]he powers, duties, qualifications, number, mode of selection and removal, terms of office, compensation, hours of work, protection [and the] welfare and safety of its officers". At the time of the enactment, the Legislature was charged with knowledge that District Attorneys were designated local officers under section 2 of the Public Officers Law. With this promulgation of home rule authority and the practical evolution of the office of District Attorney, there was no longer any basis for considering incumbents to be "state officers". The home rule provision gave the county legislators the power to determine their own policy with reference to public officers (*Westchester County Civ. Serv. Employees Assn. v Del Bello,* 47 NY2d 886, revg for reasons stated in dissenting opn at 70 AD2d 604, 605-611). Recognizing these home rule provisions, the State Legislature added section 13 to article XIII of the Constitution in 1963. The provisions of section 13 implicitly refer to District Attorney as a county officer. By removing District Attorneys from the ambit of the term "state officers" in section 7 of article XIII, all existing provisions of article XIII harmonize with each other and give effect and meaning to the entire article (see McKinney's Cons Laws of NY, Book 1, Statutes, § 98). In construing the Constitution, we should give its provisions practical effect, so that it receives a fair and liberal construction not only according to its letter, but also according to its spirit and the general purposes of its enactment (*Ginsberg v Purcell,* 51 NY2d 272, 276).

Finally, we find no merit to the county's alternate position that since section 183-a of the Judiciary Law does not apply to all counties, it is a special law requiring compliance with the home rule provisions of the State Constitution. We agree with Special Term's finding that section

183-a of the Judiciary Law is a general law within the constitutional provisions.

Within the provisions of section 3 of article IX the term "General law" is defined as: "A law which in terms and in effect applies alike to all counties, all counties other than those wholly included within a city, all cities, all towns or all villages." "Special law" is defined as: "A law which in terms and in effect applies to one or more, but not all, counties, counties other than those wholly included within a city, cities, towns or villages." (NY Const, art IX, § 3, subd [d], par [4].)

To be deemed general, an act need not apply to all persons, places or things in the State if it applies to a class, entry into which is governed by conformity or compliance with specified conditions (*Farrington v Pinckney,* 1 NY2d 74, 78). The size of the class alone does not transform a general law into a local one (*Hotel Dorset Co. v Trust for Cultural Resources of City of N. Y.,* 46 NY2d 358, 368, n 3, *supra*). As long as the act has an equal impact on all members of a rationally defined class similarly situated, the law is thus a general and not a special one (46 NY2d, at p 373; *Wein v Beame,* 43 NY2d 326, 331).

Applying these principles to section 183-a of the Judiciary Law leads us to conclude that it is a general law. The pertinent provision requires a certain salary to be paid a District Attorney by any county which designated the position as full time pursuant to subdivision 8 of section 700 of the County Law. This statute applies to a class of counties meeting a specified population condition and a full-time designation condition. Here, the population condition is common to all counties and reasonably related to the subject of the statute. The need for a full-time District Attorney is reasonably related to the population of the county and it is reasonable to provide an option in less populous counties. Once that option is exercised, the need for adequate compensation is apparent. The conditions in the statute do not in any way serve to designate the county to be affected, it has an equal impact upon all members of this rationally defined class similarly situated, and thus the law is a general one. The provisions of section 183-a of the Judiciary Law are mandatory and not optional. The

mere fact that Ontario County could continue the use of a part-time District Attorney does not convert a statute with State-wide application into a local law.

Special Term recognized that "section 201 of the County Law, which places the authority to establish the District Attorney's salary in the county, and section 183-a of the Judiciary Law, wherein the Legislature establishes the District Attorney's salary, are in conflict." (*Matter of Harvey v Finnick*, 111 Misc 2d 197, 200, *supra*.) When confronted with such an irreconcilable conflict between two statutes, the subsequent statutory provision prevails over a pre-existing and irreconcilably conflicting provision which is not expressly repealed (*People ex rel. Thorpe v Clark*, 62 AD2d 216, 224; McKinney's Cons Laws of NY, Book 1, Statutes, §§ 391, 398).

Petitioner Harvey's first appeal concerns his first two terms of office, commencing January 1, 1976 and expiring on December 31, 1981. When first elected, his annual salary was equivalent to that of the Ontario County Court Judge. On April 1, 1977 the Uniform Court Budget Act took effect providing that County Court Judges would thereafter be paid by the State (Judiciary Law, former § 220, L 1976, ch 966). Section 221-d of the Judiciary Law and section 14 of chapter 881 of the Laws of 1980 set the salary schedule for the Ontario County Court Judge, retroactive to October 1, 1978, as follows:

| | |
|---|---|
| Effective October 1, 1978 | $38,520 |
| Effective April 1, 1979 | $42,520 |
| Effective October 1, 1979 | $45,496 |
| Effective October 1, 1980 | $48,000 |
| Effective January 1, 1981 | $50,400 |

Harvey's first petition seeks additional compensation for the period from October 1, 1978, when the County Court Judge's salary was increased, through December 31, 1981. He is entitled to the annual salary of $38,520 effective October 1, 1978, $42,520 effective April 1, 1979, $45,496 effective October 1, 1979, $48,000 effective October 1, 1980, and $50,400 effective January 1, 1981.

The second appeal relates to petitioner's third term, which commenced on January 1, 1982. The petition seeks

additional compensation for the period from January 1, 1982 to date. Chapter 881 of the Laws of 1980 gave all County Court Judges a 5% salary increase, effective January 1, 1981 and an additional 7% increase effective January 1, 1982. Harvey's annual salary for 1982 was set by local law at $39,500; whereas, the Ontario County Court Judge's annual salary was $53,928. He should be compensated at the annual salary of $53,928 from January 1, 1982 and a salary equivalent to that paid the Ontario County Court Judge thereafter.

The judgments should be reversed and the petitions granted accordingly.

SIMONS, J. P., DOERR, MOULE and SCHNEPP, JJ., concur.

Appeal No. 1. — Judgment unanimously reversed, on the law, with costs, and petition granted, in accordance with opinion by CALLAHAN, J.

Appeal No. 2. — Judgment entered March 26, 1982, unanimously reversed, on the law, with costs, and petition granted, in accordance with same opinion as in *Matter of Harvey v Finnick,* Appeal No. 1, decided herewith. Appeal from judgment entered March 30, 1982, dismissed as moot.