Matter of St. Lawrence County v City of Ogdensburg (2022 NY Slip Op 04932)

Matter of St. Lawrence County v City of Ogdensburg

2022 NY Slip Op 04932

Decided on August 11, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:August 11, 2022

534539
[*1]In the Matter of St. Lawrence County et al., Appellants,
v
City of Ogdensburg et al., Respondents, et al., Respondents.

Calendar Date:May 26, 2022

Before:Garry, P.J., Lynch, Aarons, Reynolds Fitzgerald and Ceresia, JJ.

Stephen D. Button, County Attorney, Canton (Alan J. Pierce of Hancock Estabrook LLP, Syracuse, of counsel), for appellants.
Coughlin & Gerhart LLP, Binghamton (Nicholas S. Cortese of counsel), for City of Ogdensburg and others, respondents.

Lynch, J.
Appeal from an order and judgment of the Supreme Court (Farley, J.), entered December 13, 2021 in St. Lawrence County, which, in a combined proceeding pursuant to CPLR article 78, action for declaratory judgment and plenary action, among other things, partially dismissed petitioners' application to declare City of Ogdensburg Local Law No. 2-2021 null and void.
In September 2021, respondent City of Ogdensburg enacted Local Law No. 2-2021 (hereinafter Local Law No. 2), effective January 1, 2022 (City of Ogdensburg Local Law No. 2-2021 § 6), amending the City charter "to relinquish the City's tax foreclosure responsibility with the intent of all foreclosure responsibility defaulting to [petitioner] St. Lawrence County" (City of Ogdensburg Local Law No. 2-2021). Specifically, Local Law No. 2 provided that "[t]he County shall be responsible for the enforcement of delinquent City taxes in accordance with [RPTL article 11]" (City of Ogdensburg Local Law No. 2-2021 § 2 [amending City of Ogdensburg Charter § C-80]), and is required to "credit the City with the amount of such unpaid delinquent taxes" (City of Ogdensburg Local Law No. 2-2021 § 3 [amending City of Ogdensburg Charter § C-81]). The City also relieved itself of its prior obligation to collect and remit County taxes (see City of Ogdensburg Local Law No. 2-2021 § 4 [deleting City of Ogdensburg Charter § C-83]).
Petitioners thereafter commenced this combined proceeding/action seeking, among other relief, a declaration that Local Law No. 2 violates the NY Constitution and various statutory provisions, including NY Constitution, article IX, § 2 (d) and Municipal Home Rule Law § 10 (5), which both prohibit a local government from adopting local laws that "impair the powers" of any other local government. After joinder of issue and certain motion practice, Supreme Court ultimately issued a declaration in favor of the City. Having found the enactment valid, the court dismissed petitioners' CPLR article 78 claims, which generally sought to compel the City to repeal or refrain from enforcing same. Petitioners appeal.[FN1]
We affirm. RPTL article 11, adopted in 1993, is designated the "Uniform Delinquent Tax Enforcement Act" and outlines a statutory scheme for the enforcement and collection of delinquent real property taxes at the local level (RPTL 1100 et seq.; see L 1993, ch 602; Matter of City of Schenectady [Permaul], 201 AD3d 1, 7-8 [2021], appeal dismissed and lv denied 38 NY3d 994 [2022]). The provisions of RPTL article 11 apply to, among other things, all counties and cities in the state "and shall supersede any inconsistent general, special or local law" (RPTL 1104 [1]), except where a county or city opted out pursuant to RPTL 1104 (2). As pertinent here, RPTL 1104 (2) authorized a city, which was enforcing the collection of delinquent taxes pursuant to its charter prior to January 1, 1993, to continue such enforcement provided it adopted a local law, no later than July 1, 1994, opting to [*2]do so. The City did so pursuant to City of Ogdensburg Local Law No. 3-1994. As a result, "the collection of taxes in such . . . [C]ity . . . shall continue to be enforced pursuant to such charter . . . as such charter . . . may from time to time be amended" (RPTL 1104 [2] [emphasis added]).
Under RPTL article 11, the "[e]nforcing officer" refers to the "officer of any tax district empowered or charged by law to enforce the collection of tax liens on real property" (RPTL 1102 [3]). Pertinent here, "where no law provides otherwise, the enforcing officer shall be (i) in a county which is a tax district, the county treasurer . . ., [and] (ii) in a city which is a tax district, the official so empowered or charged by the city charter" (RPTL 1102 [3] [a]). Correspondingly, a "[t]ax district" includes a county or "a city, other than a city for which the county enforces delinquent taxes pursuant to the city charter" (RPTL 1102 [6] [a], [b]). Read together, as between a county and a city, the county treasurer serves as the enforcement officer unless the city charter provides otherwise.
RPTL article 9 pertains to the "[l]evy and [c]ollection of [t]axes" (see RPTL 900 et seq.). By definition, a "'[d]elinquent tax' means an unpaid tax . . . on behalf of a municipal corporation . . . relating to any parcel which is included in the return of unpaid delinquent taxes prepared pursuant to [RPTL 936]" (RPTL 1102 [2]). All taxes levied upon a parcel of real property become a lien on that property as of January 1 of the fiscal year for which the taxes have been levied (see RPTL 902; 1102 [4]). Prior to the start of a fiscal year, the county legislative body must "annex to or . . . file with the assessment roll of each city and town a warrant . . . authorizing and directing the collecting officer of the city or town to collect" the sums due the county (RPTL 904 [1]). Once the warrant is so annexed or filed, the city's assessment roll "become[s] the tax roll" (RPTL 904 [1]). In that process, the "collecting officer" of a city is required to receive the taxes paid (RPTL 924 [1]). For taxes that remain unpaid by the end of the fiscal year in question, a city "collecting officer shall make and deliver to the county treasurer an account . . . of all taxes listed on the tax roll which remain unpaid, . . . [and t]he county treasurer shall, if satisfied that such account is correct, credit him [or her] with the amount of such unpaid delinquent taxes" (RPTL 936 [1] [emphasis added]). In effect, where the county treasurer is statutorily required to serve as enforcing officer, the city would be made whole upon the return and the county would assume the responsibility of enforcement.
By adopting Local Law No. 2, the City amended its charter by deleting the provisions requiring the City to enforce the payment of delinquent taxes, leaving the County with that obligation under RPTL article 11. The City was statutorily authorized to do so pursuant to RPTL 1104 (2), [*3]which recognizes that a city charter "may from time to time be amended." As a consequence of the amendment, the City is no longer a "tax district" for purposes of RPTL article 11 (see RPTL 1102 [6]) and the County treasurer becomes the enforcing officer (see RPTL 1102 [3] [a] [i]). As such, the County treasurer is statutorily required to credit the City for unpaid delinquent taxes upon the return at the end of the fiscal year (see RPTL 936). This outcome is neither an expansion nor impairment of the County's powers but simply a consequence of the statutory structure outlined in RPTL articles 9 and 11. For this reason, we affirm Supreme Court's decision upholding the validity of Local Law No. 2.
Aarons and Reynolds Fitzgerald, JJ., concur.
Garry, P.J., dissenting.
The Real Property Tax Law has been aptly described as a "byzantine statutory scheme" (Matter of Town of Irondequoit v County of Monroe, 36 NY3d 177, 182 [2020]). Against this backdrop, the majority here errs in relying upon and applying the provisions set forth in RPTL article 9; these provisions were not discussed by the parties in this manner because they do not govern this dispute. Although it is true that, pursuant to RPTL 936, counties must "guarantee" and credit a collecting officer with "certain 'unpaid delinquent taxes'" (id. at 180), the warrant subject to RPTL article 9 procedure is a county warrant (see RPTL 904 [1]). Counties generally have no authority to assess real property — that power has traditionally been delegated to cities, towns and villages (see Foss v City of Rochester, 104 AD2d 99, 106 [1984], affd 65 NY2d 247 [1985]). "Because counties do not have their own assessors, the Real Property Tax Law provides that they shall base their taxes on the assessment rolls prepared by the city and town assessors" (id. [emphasis added and footnote omitted]; see RPTL 900). "The assessment roll of each city and town, at the time the county's warrant is annexed thereto, becomes the county tax roll which is then returned to the assessing unit for collection. Revenues collected by towns and cities for county purposes are transferred to the county after collection" (Foss v City of Rochester, 104 AD2d at 106 [internal citations omitted and emphasis added]).
Here, in contrast, it is the City Council of respondent City of Ogdensburg that levies the annual real property tax for the City budget (see City of Ogdensburg Charter § C-70). It is the City Manager — not any official of petitioner St. Lawrence County (compare RPTL 900 [1]; 904 [1]) — who signs the tax warrant directing the City Comptroller to collect City taxes (see City of Ogdensburg Charter § C-71). This levy is wholly in line with the City's general powers (see General City Law § 20 [4]; Municipal Home Rule Law § 10 [1] [ii] [a] [8]). Thus, we disagree that RPTL 936 requires the County to make the City whole for uncollected City-levied taxes and therefore operates to shift the responsibility to enforce those [*4]delinquent taxes to the County.[FN2] For the reasons set forth below, we find that the City has erred in attempting to unilaterally impose an obligation upon the County to enforce and guarantee payment of the City tax levy. We accordingly dissent.
It is well established that "local governments 'have only the lawmaking powers the Legislature confers on them'" (DJL Rest. Corp. v City of New York, 96 NY2d 91, 94 [2001], quoting Kamhi v Town of Yorktown, 74 NY2d 423, 427 [1989]). Regarded as "[p]erhaps the most significant delegation of state legislative authority" (Matter of Baldwin Union Free Sch. Dist. v County of Nassau, 22 NY3d 606, 620 [2014]), NY Constitution, article IX, § 2 "empower[s] municipalities to legislate in a wide range of matters relating to local concern" (Albany Area Bldrs. Assn. v Town of Guilderland, 74 NY2d 372, 376 [1989]). The Municipal Home Rule Law was enacted to implement the foregoing article (see Municipal Home Rule Law § 50 [1]), and both sources of law grant similar powers and establish similar limitations on those powers. Generally, "[s]o long as local legislation is not inconsistent with the [NY] Constitution or any general law, localities may adopt local laws both with respect to their 'property, affairs or government' (NY Const, art IX, § 2 [c] [i]; see Municipal Home Rule Law § 10 [1] [i]), and with respect to other enumerated subjects, except 'to the extent that the [L]egislature shall restrict the adoption of such a local law'" (Albany Area Bldrs. Assn. v Town of Guilderland, 74 NY2d at 376, quoting NY Const, art IX, § 2 [c] [ii]; see Municipal Home Rule Law § 10 [1] [ii]; see also Municipal Home Rule Law §§ 2 [5]; 11, 33). One such subject is the "[t]he levy, collection and administration of local taxes authorized by the [L]egislature" (NY Const, art IX, § 2 [c] [ii] [8]; see Municipal Home Rule Law § 10 [1] [ii] [a] [8]-[9]).
Petitioners initially argue that City of Ogdensburg Local Law No. 2-2021 (hereinafter Local Law No. 2) is invalid for its inconsistencies with RPTL article 11, which we agree now operates as a general law (see generally NY Const, art IX, § 2 [c] [ii] [8]; Consolidated Edison Co. of N.Y. v Town of Red Hook, 60 NY2d 99, 108 [1983]). As the majority notes, the City opted out of the Uniform Delinquent Tax Enforcement Act (see City of Ogdensburg Local Law No. 3-1994; see also RPTL 1104 [2]). Thus, prior to the enactment of Local Law No. 2, RPTL article 11 presented merely an unselected local tax district option (see Sonmax, Inc. v City of New York, 43 NY2d 253, 258 n [1977]).[FN3] The City would be permitted to amend the enforcement procedure in its charter (see RPTL 1104 [2]). Here, however, it did more; it also repealed its opt-out provision (see City of Ogdensburg Local Law No. 2-2021 § 5 [deleting Administrative Regulations of the City of Ogdensburg § 199-43, adopted by Local Law No. 3-1994]; see also City of Ogdensburg Local Law No. 2-2021 § 2 [deleting City of Ogdensburg Charter § [*5]C-80]; compare Preferred Group of Manhattan, Inc. v City of Poughkeepsie, 166 AD3d 916, 918 [2018], appeal dismissed 32 NY3d 1189 [2019], lv denied 33 NY3d 905 [2019]). As a result, the City became bound by RPTL article 11 procedure (see RPTL 1104 [1]; 1106 [1]). RPTL article 11 is now of uniform impact on the City and all other local governments that have not opted out of its purview and thus operates as a general law (cf. Matter of Radich v Council of City of Lackawanna, 93 AD2d 559, 564 [1983], affd 61 NY2d 652 [1983]; Matter of Harvey v Finnick, 88 AD2d 40, 47 [1982], affd 57 NY2d 522 [1982]; Rozler v Franger, 61 AD2d 46, 51-52 [1978], affd 46 NY2d 760 [1978]).
Turning to the procedure set forth in RPTL article 11, the Legislature, in RPTL 1150, has expressly authorized "tax districts . . . to make agreements with one another with respect to any parcel of real property upon which they respectively own tax liens in regard to the disposition of such liens, of the parcel of real property subject thereto and of the avails thereof" (RPTL 1150 [1]). This provision has been used to mutually accomplish a variety of shared goals regarding delinquent real property taxes (see e.g. 7 Ops Counsel SBEA Nos. 46, 52 [1979]), specifically including the establishment of the exact sort of arrangement that, here, the City unilaterally adopted and imposed upon the County following a breakdown of negotiations for same (see State Board of Equalization and Assessment, Report to Governor, Real Property Tax Enforcement in New York State: A System in Need of Reform at 15 [Feb. 28, 1989]; 5 Ops Counsel SBEA No. 44 [1975]).[FN4] The idea that arrangements like the one presented here must be reached mutually is not unique to RPTL article 11 (see e.g. RPTL 578 [2] [a] [authorizing the legislative body of a county and the governing body of any city, town, village or school district therein to enter into contracts with each other for the collection of taxes by the county treasurer]; RPTL 972 [1] [authorizing the legislative body of a county to adopt a local law to become the tax collection agency for the purpose of collecting taxes in installments as prescribed by the statutes governing the optional method of collection and RPTL 1336-1342]; RPTL 1442 [1] [authorizing the legislative body of any county to adopt a local law providing for the collection of delinquent village taxes if such collection is requested]). In our view, the City's circumvention of RPTL 1150 renders Local Law No. 2 inconsistent with a general law, and it is therefore violative of the NY Constitution and the Municipal Home Rule Law.[FN5] [FN6]
Even if Local Law No. 2 were not inconsistent with RPTL article 11 as a general law, we would further find that the enactment "impair[s] the powers" of the County and thereby violates NY Constitution, article IX, § 2 (d) and Municipal Home Rule Law § 10 (5). The term "impair" is not defined in either source of law (see McKinney's Cons Laws of NY, Book 1, Statutes § 94), [*6]but impairment of a power is referenced elsewhere in the same section and article of the NY Constitution, and it is to be presumed that the word "impair" is used in the same sense throughout (see McKinney's Cons Laws of NY, Book 1, Statutes § 236). The term "impair" should be given its own meaning and not be rejected as mere superfluity (see McKinney's Cons Laws of NY, Book 1, Statutes § 231). The term must thus mean something other than to "repeal[], diminish[] . . . or suspend[]" (NY Const, art IX, § 2 [b] [1]) or to "restrict" (NY Const, art IX, § 3 [a]). Guided by dictionary definitions (see McKinney's Cons Laws of NY, Book 1, Statutes §§ 232, 234) and the purpose and spirit of the laws (see McKinney's Cons Laws of NY, Book 1, Statutes § 235; Municipal Home Rule Law § 50 [1]), we would find that to impair a power within the meaning of NY Constitution, article IX, § 2 (d) and Municipal Home Rule Law § 10 (5) is to weaken that power (see Merriam-Webster Online Dictionary, impair [http://www.merriam-webster.com/dictionary/impair]; Cambridge Dictionary, impair [https://dictionary.cambridge.org/us/dictionary/english/impair]; Oxford Learner's Dictionaries, impair [https://www.oxfordlearnersdictionaries.com/us/definition/english/impair]; Britannica Dictionary, impair [https://www.britannica.com/dictionary/impair]).
It appears that Supreme Court accepted the view that Local Law No. 2 did not impair any power of the County because it did not diminish, or take away, any such power — the court holding that, "[t]o the contrary, [Local Law No. 2] increases the County's tax enforcement powers with respect to delinquent City taxes." Certainly, the City would have no authority to increase the County's taxation power; the delegation of any part of the state's taxation power may only come expressly from the state (see Matter of Baldwin Union Free Sch. Dist. v County of Nassau, 22 NY3d at 619-620; County Sec. v Seacord, 278 NY 34, 37 [1938]). What is increased by Local Law No. 2 are the obligations that the County must fulfill with its own revenue and resources. The unilateral imposition of an unfunded mandate onto the County does more than merely "relate to [the County's] . . . affairs" (County of Rensselaer v City of Troy, 102 AD2d 976, 977 [1984]; see NY Const, art IX, § 2 [c] [ii] [8]; Municipal Home Rule Law § 10 [1] [ii]), or, as Supreme Court stated, "inconvenience[]" its "operations."
As the County asserts, Local Law No. 2 impairs its power to fully control its own affairs, such as its budget and its workforce, by weakening that power (see NY Const, art IX, § 2 [c] [i]; Municipal Home Rule Law § 10 [1] [i]; see generally Wambat Realty Corp. v State of New York, 41 NY2d 490, 493-494 [1977]). This is perhaps most clear with respect to the make-whole provision of Local Law No. 2 § 3, which "impair[s]" the County's power by "requir[ing] the [C]ounty to guarantee [the payment of City-levied taxes] . . . even though it is not required to do so under [*7]the [RPTL]" (1986 Ops St Comp No. 86-76 at 122 [1986]). The administrative guidance states that a city may not lawfully amend its charter "to require [a] county to . . . enforce taxes (either the city or the county-state levy) according to procedures established by the city" (2 Ops Counsel SBEA No. 100 [1972]). Notwithstanding the City's attempt to invoke RPTL article 11 procedure (see City of Ogdensburg Local Law No. 2-2021 § 2), neither that article, nor article 9, requires the County to undertake the burdens that the City purports it does.
Finally, we agree with the majority's conclusion that respondent Ogdensburg City School District's dispute over the City's obligation to collect and enforce delinquent school taxes has been rendered moot by the enactment of City of Ogdensburg Local Law No. 1-2022.
For the reasons stated above, we would reverse the order and judgment of Supreme Court.
Ceresia, J., concurs.
ORDERED that the order and judgment is affirmed, without costs.

Footnotes

Footnote 1: In January 2022, the City enacted City of Ogdensburg Local Law No. 1-2022, amending the City Charter to expressly affirm the City's obligation to enforce delinquent taxes on behalf of respondent Ogdensburg City School District for properties located within the City (City of Ogdensburg Charter § C-80, as amended by Ogdensburg Local Law No. 1-2022 § 1; see RPTL 1322). As such, any challenge to the impact of Local Law No. 2 upon delinquent school taxes has been rendered moot (see Lasky v Town Bd. of Town of Amherst, 57 AD3d 1392, 1392-1393 [2008]; compare Dalton v Pataki, 5 NY3d 243, 267 [2005], cert denied 546 US 1032 [2005]).

Footnote 2: In preparing to overhaul RPTL article 11, the former State Board of Equalization and Assessment conducted a statewide survey to determine the range of delinquent tax enforcement procedures being utilized. Only 3 of the 56 responding counties (1 did not respond) replied that they "guarantee" unpaid city taxes (Albany, Cattaraugus and Herkimer Counties) (State Board of Equalization and Assessment, Report to Governor, Real Property Tax Enforcement in New York State: A System in Need of Reform at ex. A [Feb. 28, 1989]). RPTL 936 (1) has, in all relevant ways, remained the same since its codification (see L 1958, ch 959). It thus bears noting that, if this statute required a county to make a city whole for all real property taxes that the city was unsuccessful in collecting, including those levied by the city, one might reasonably expect that number to be significantly higher.

Footnote 3: When adopting or amending local laws on the levy, collection and administration of local taxes, counties, towns and villages must legislate consistently not only with general laws but "with laws enacted by the [L]egislature" (Municipal Home Rule Law § 10 [1] [ii] [a] [8]-[9]; see also Municipal Home Rule Law § 2 [5], [12]). Cities are under no such additional obligation (see Sonmax, Inc. v City of New York, 43 NY2d at 257; Mem of Off for Local Govt, reprinted in McKinney's Cons Laws of NY, Book 35C, Municipal Home Rule Law — Statute of Local Government at XVII-XVIII [1994 ed]).

Footnote 4: For example, prior to the enactment of RPTL 1442, counties and villages availed themselves of RPTL 1150 in the above manner (see State Board of Equalization and Assessment, Report to Governor, Real Property Tax Enforcement in New York State: A System in Need of Reform at 15 [Feb. 28, 1989]; 5 Ops Counsel SBEA No. 44 [1975]), and petitioners have provided this Court with several examples of RPTL 1150 agreements between cities and counties concerning county enforcement of delinquent city taxes. Towns are responsible for collecting taxes (see Town Law § 37 [1]), but they generally have no role in the enforcement of delinquent taxes (see Rose v Eichhorst, 42 NY2d 92, 95-96 [1977]; County of Orange v City of Newburgh, 68 Misc 2d 998, 999-1000 [Sup Ct, Orange County 1972]; State Board of Equalization and Assessment, Report to Governor, Real Property Tax Enforcement in New York State: A System in Need of Reform at 14 [Feb. 28, 1989]; see also RPTL 1102 [6] [d]).

Footnote 5: In light of the Legislature's invitation to local governments to control their own delinquent tax enforcement procedure via RPTL 1150 agreements, we find petitioners' field preemption argument to be misplaced. However, the fact that the Legislature has created specific procedures to centralize the enforcement of delinquent taxes with respect to counties and villages (see RPTL 1442), counties and towns (see RPTL 976) and counties and non-city school districts (see RPTL 1330) supports a reading of RPTL 1150 as the mechanism by which cities may — cooperatively — accomplish what the City seeks here.
Footnote 6: Supreme Court also relied on a definitional provision in RPTL article 11 in concluding to the contrary. RPTL 1102 defines a "[t]ax district" — as it applies to cities — as "a city, other than a city for which the county enforces delinquent taxes pursuant to the city charter" (RPTL 1102 [6] [b]). We do not disagree that the definition contemplates the sort of arrangement that the City seeks; however, RPTL 1102 (6) (b) does not authorize the manner in which the instant arrangement was reached — and that is a critical distinction.