OPINION OF THE COURT
 

 Per Curiam
 

 In Matter of Colt Inds. v Finance Administrator of City of N. Y., the order of the Appellate Division should be modified by deleting therefrom all declarations as to the constitutionality or applicability of former section 307 and subdivision 3 of section 720 of the Real Property Tax Law and by reversing so much of the order as denied petitioner’s motion for discovery of “special sales data listings” and remitting that motion to Supreme Court for further consideration and disposition in light of our decision in this case. As so modified, the order of the Appellate Division should
 
 *541
 
 be affirmed and the consolidated proceedings remitted to Supreme Court. The question certified is answered in the negative.
 

 In Matter of Equitable Life Assur. Soc. of U. S. v Finance Administrator of City of N. Y., the order of the Appellate Division should be modified to the extent of granting petitioner’s motion to dismiss those defenses which rely on the New York City Administrative Code’s purported authorization of a classified system of assessment. As so modified, the order of the Appellate Division should be affirmed. The question certified should be answered in the negative.
 

 Section 166-1.0 of the Administrative Code of the City of New York governs the procedure for review of tax assessments in the City of New York. By its terms, taxpayers may challenge the assessed valuation of their property on the grounds that it is illegal, that it overvalues the property, or that “the assessment is erroneous by reason of inequality.” That section further provides that inequality may be proven by showing that the assessment was “made at a higher proportionate valuation than the assessment of other real property of like character in the same ward or section, or other real property on the assessment rolls of the city for the same year”. To hold, as the courts below have, that this procedural provision is legislative authorization for a classified system of assessments in the City of New York improperly expands the scope of the section. In these proceedings to challenge tax assessments on the ground of inequality, we have no occasion to reach and, therefore, do not address the contentions of the parties with respect to the methods or systems of assessments in New York City. Our attention is focused on assertions of inequality of actual assessments whatever the means or basis on which they were made. Thus, we hold that this section authorizes taxpayers who challenge the assessments of their real property to present proof of inequality based on either or both of two theories — that the particular assessment “has been made at a higher proportionate valuation than the assessment of other real property of like character in the same ward or section”, or that the assessment “has been made at a higher proportionate valuation
 
 *542
 
 than the assessment of *** other real property on the assessment rolls of the city for the same year.” Thus, proof may be introduced to establish inequality with respect to property of similar character in the same ward or section or with respect to the city-wide assessment rolls. In continuing this proceeding, petitioner should be allowed to introduce either or both types of proof.
 

 There remains the question whether, if it is sought to establish inequality with respect to city-wide assessment rolls, State equalization rates may be introduced. (Cf.
 
 Matter of Rokowsky v Finance Administrator of City of N. Y.,
 
 41 NY2d 574;
 
 Guth Realty v Gingold,
 
 34 NY2d 440.) Legislative action taken over the past few years to restrict the use of such proof and considered by the courts below
 
 [1]
 
 expired on October 30, 1981 and accordingly now has no application to this proceeding.
 

 On December 3, 1981, however, the Legislature passed S-7000A over the Governor’s veto (L1981, ch 1057). Section 7 of that bill contains a new subdivision 3 of section 720.
 
 [2]
 
 
 *543
 
 This new legislation contains no express provision for retroactive application as did the former law (L 1979, ch 126, § 4; L 1979, ch 127; § 3); it provides only, in section 17, that “this act shall take effect immediately”. Accordingly to the extent that it is otherwise appropriate, it applies to proceedings pending on December 3, 1981.
 

 We hold that this new subdivision 3 now applies to these proceedings. Although the proceedings were commenced prior to the enactment of S-7000A, no evidentiary hearings have yet been held or interlocutory determinations made as was the case in
 
 Matter of Slewett & Farber v Board of Assessors of County of Nassau
 
 (54 NY2d 547 [decided herewith]). Accordingly, when such evidentiary hearings are held in these cases on remittal following this appeal, among other considerations to be taken into account in rulings with respect to the admissibility of evidence will be the provisions of new subdivision 3 of section 720.
 

 We further consider, on the basis of postargument briefs submitted to this court after the enactment by the Legislature of S-7000A, the constitutionality of the new subdivision 3 of section 720 insofar as it is applicable to the litigation now before us. As did former subdivision 3, this section governs what evidence is admissible on the issue of whether an assessment is unequal. Data on selected parcels and actual sales are admissible as evidence to show an unequal assessment in all assessing units. Use of the State equalization rate, however, is limited to “all assessing units other than special assessing units.”
 
 [3]
 
 The effect of this provision is to foreclose the use of State equalization rates in-this type of proceeding in the City of New York and in Nassau County.
 

 Petitioners claim that this is a restriction based on population and geographic area which violates their right to equal protection of the laws. They further claim that the excessive cost of proving a claim of unequal assessment associated with the remaining two methods of proof essentially bars them from seeking any redress and, therefore, constitutes a violation of their due process rights. Recognizing that subdivision 3 of section 720 is procedural in
 
 *544
 
 nature, we hold this section of the Real Property Tax Law, as enacted on December 3, 1981, to be constitutional.
 

 The core of petitioners’ equal protection claim is that the Legislature, by allowing the use of State equalization rates as proof of the ratio between assessed and full value in all parts of the State but the City of New York and Nassau County, makes an impermissible distinction between geographic areas of the State. “Equal protection does not require territorial uniformity of law within a State
 
 (Salsburg
 
 v.
 
 Maryland,
 
 346 U. S. 545 [rules of evidence in prosecutions for gambling offenses];
 
 Missouri
 
 v.
 
 Lewis,
 
 101 U. S. 22 [access to appellate courts]).”
 
 (Matter of Rosenthal v Hartnett,
 
 36 NY2d 269, 274.) It has long been the rule that the State Legislatures may make such geographic distinctions without denying any person equal protection of the laws. The Supreme Court in
 
 Missouri u Lewis
 
 (101 US 22, 31) stated: “If the State of New York, for example, should see fit to adopt the civil law and its method of procedure for New York City and the surrounding counties, and the common law and its method of procedure for the rest of the State, there is nothing in the Constitution of the United States to prevent its doing so. This would not, of itself, within the meaning of the Fourteenth Amendment, be a denial to any person of the equal protection of the laws.”
 

 The distinction made by this legislation, although not based on geographic factors, is neither impermissible nor unreasonable; rather, the distinction is based on size of population within municipal units.
 
 [4]
 
 To strike down this provision, it must be shown that the Legislature acted unreasonably — that is, that the Legislature did not have a rational basis for creating such a distinction.
 

 The Legislature had a rational basis for designating the City of New York and Nassau County special assessing units and restricting the admissibility of State equalization rates in such units. This legislation which was designed to overrule this court’s decision in
 
 Matter of Heller-stein v Assessor of Town of Islip
 
 (37 NY2d 1), which required full value assessment for all property, recognized
 
 *545
 
 the unique nature of those communities with their high density of population and diversity of property.
 

 Petitioners further contend that by restricting the use of State equalization rates as proof of the ratio between assessed and full value in special assessing units, their right to due process of the law has been violated. This argument is premised on claims that the other authorized methods of proof, selected parcels and sales, are prohibitively expensive so that petitioners, and similarly situated parties, are effectively foreclosed from challenging the rate of assessment of their property. While a “law which would practically shut out the evidence of a party and thus deny him the opportunity for a trial would substantially deprive him of due process of law”
 
 (Board of Comrs. of Excise of City of Auburn v Merchant,
 
 103 NY 143, 148), it cannot be said that this legislation has been shown, on its face, to constitute such a deprivation. The fact that these procedures are admittedly more cumbersome and expensive does not require a holding that there is a deprivation of due process.
 
 (Gibbes v Zimmerman,
 
 290 US 326.) The Legislature, in its wisdom, has seen fit to restrict the admissible proof to selected parcels and sales data and there are no grounds for this court, by judicial fiat, to authorize additional proof. The Legislature did no more than restore, in special assessing units, the
 
 status quo ante
 
 chapter 942 of the Laws of 1961 which first authorized the admission of State equalization rates.
 

 Once the ratio between assessed value and full market value has been determined, petitioners will be required to establish the fair market value for the property against which the ratio will be applied to determine whether the assessment is proper. Because sales data of comparable property is one method of establishing a fair market value, petitioner Colt Industries’ motion for discovery of that data is remitted to Supreme Court for further consideration and disposition in light of our decision in this case. Assuming petitioner can show a correlation between those listings and the question of fair market value, discovery should be granted.
 

 
 *546
 
 Chief Judge Cooke and Judges Jasen, Gabrielli, Jones, Wachtler, Fuchsberg and Meyer concur in
 
 Per Curiam
 
 opinion.
 

 In
 
 Matter of Colt Inds. v Finance Administrator:
 
 Order modified, without costs, and matter remitted to Supreme Court, New York County, for further proceedings in accordance with the opinion herein and, as so modified, affirmed. Question certified answered in the negative.
 

 In
 
 Matter of Equitable Life Assur. Soc.v Finance Administrator:
 
 Order modified, without costs, in accordance with the opinion herein and, as so modified, affirmed. Question certified answered in the negative.
 

 [1]
 

 . Amendment of subdivision 3 of section 720 of the Real Property Tax Law (L 1979, ch 126, 82; L 1981, ch 3, 8 1; L 1981, ch 107, 8 1; L 1981, ch 259, § 1) and enactment of new section 721 of the Real Property Tax Law (L 1979, ch 127, 82; L 1981, ch 3, §2).
 

 [2]
 

 . The revised subdivision 3 of section 720 now reads:
 

 “3. Evidence on the issue of whether an assessment is unequal shall be limited as hereinafter provided. The parties shall mutually agree on the parcels to be appraised and the number of witnesses to be heard with respect to such issue. In the event the parties fail to agree on such parcels or on the number of witnesses, upon application of either party the court or referee shall select the parcels to be appraised without reference to their assessed values, or shall determine the number of witnesses, or both, as the case may be. Before any testimony is given by either party as to the value of such parcels, each party shall simultaneously file with the court or referee, on a date fixed by the court or referee, a written statement or tabulation of the appraised values placed upon such parcels by the witnesses of the respective parties, and each party shall serve on the other at the same time a copy of such statement or tabulation of values stated by his witnesses. The parties shall be limited in their proof on the trial of such issue to such parcels and witnesses, except that in any event, whether or not parcels are selected as hereinabove provided, evidence may be given by either party as to the following:
 

 “(a) in all assessing units, actual sales of real property within the assessing units that occurred during the year in which the assessment under review was made;
 

 “(b) in all assessing units other than special assessing units as defined in section eighteen hundred one of this chapter, the state equalization rate established for the roll containing the assessment under review; or “(c) in all special assessing units as defined in section eighteen hundred one of this chapter, only for proceedings commenced with respect to assessment rolls completed after December thirty-first, nineteen hundred eighty-three, the latest applicable class ratio established for the roll containing the assessment under review; provided, however, that such class ratios shall not be admissible pursuant to this paragraph unless the petitioner alleges and proves an inequality greater than twelve and one half percent of such class ratio.”
 

 [3]
 

 . A special assessing unit is defined by section 1801 as an assessing unit with a population of one million or more.
 

 [4]
 

 .
 
 The application of this distinction, as well as every differentiation among municipal units, whatever its basis, will have a geographic consequence.