■ In the Matter of RIVER HOUSE-BRONXVILLE, Respondent, v JOHN W. GALLAWAY, as Assessor of the Village of Bronxville, et al., Appellants. In the Matter of RIVER HOUSE-BRONXVILLE, Respondent, v LAWRENCE P. HOFFMAN, as Assessor of the Town of Eastchester, et al., Appellants. — In consolidated proceedings pursuant to article 7 of the Real Property Tax Law to review assessments for the years 1976, 1977 and 1978 on real property improved with a cooperative apartment building, the appeal is from a judgment of the Supreme Court, Westchester County (Sullivan, J.), entered July 15, 1982, which, *inter alia,* reduced the assessments. ¶ Judgment affirmed, without costs or disbursements. ¶ Petitioner has previously appealed (1) from a judgment of the Supreme Court, Westchester County (Sullivan, J.), dated October

19, 1979, which determined the fair market value of the property, applied stipulated equalization ratios, sustained the assessments under review and dismissed the petitions; and (2) from an order of the same court, dated November 19, 1979, which denied petitioner's motion, *inter alia,* to reopen the case. By order dated January 12, 1981 (*Matter of River House-Bronxville v Gallaway,* 79 AD2d 990), this court reversed the judgment and order appealed from and granted petitioner's motion to the extent of remitting the matter to Special Term for further proceedings consistent with our memorandum decision on the appeals. ¶ The assessments under review are for the tax years 1976, 1977 and 1978 and relate to a cooperative apartment building containing 52 apartments plus a superintendent's apartment in the basement. The building was constructed in 1959. ¶ When the original trial was held on June 4, 1979, in reported cases involving the review of assessments on cooperative apartment buildings, the experts employed by the litigants generally utilized the capitalization of net income approach to value, determining estimated annual gross income by treating the property as though it were a commercial venture (i.e., a conventional apartment property) and imputing rental value to the cooperative building by comparison to rental properties (see *Matter of Milton Harbor Co. v Assessor of City of Rye,* 47 AD2d 632; *Matter of 880 Fifth Ave. Corp. v Tax Comm.,* 20 AD2d 879, affd 17 NY2d 794). Accordingly, at the original trial the experts for both the petitioner and the appellants used the income approach (*Matter of River House-Bronxville v Hoffman,* 101 Misc 2d 422, 423, revd 79 AD2d 990, *supra*). ¶ On advice of counsel, the appraiser for the municipalities also utilized a market data approach and relied upon it as the primary indicator of value. Under that method the market values of the individual cooperatives in the building were determined by examination of the actual sales of cooperative apartments on the property and in comparable cooperative buildings (*Matter of River House-Bronxville v Hoffman,* 101 Misc 2d 422, 423, *supra*). The method as used at the original trial was subjected to various adjustments, including a 20% discount factor that an investor would demand for the risk and expense of holding the property prior to its sale. ¶ The trial court noted in its decision after the original trial (*Matter of River House-Bronxville v Hoffman,* 101 Misc 2d 422, 423, *supra*): ¶ "As counsel for the respondent, Village of Bronxville, states in his posttrial brief, 'The issue presented by this case is one of first impression so far as research has disclosed for the Courts of this State, which is: Is it proper to use a market data approach in tax certiorari proceedings to determine the full value of a cooperative building based upon the values of the individual cooperative units and relying upon actual sales of the units in the subject property and sales of comparable units in the immediate area?' ¶ "This presents a question of first impression because in the reported cases involving the review of assessments on cooperative apartment buildings, the experts employed by the litigants utilized the income approach to value. (See *Matter of Milton Harbor Co. v Assessor of City of Rye,* 47 AD2d 632; *Matter of [880] Fifth Ave. Corp. v Tax Comm. of City of N. Y.,* 20 AD2d 879, affd 17 NY2d 794.)" ¶ The court found that the sales of units within the petitioner's cooperative and comparable cooperative apartment buildings in the immediate vicinity "more accurately reflect[ed] the value" of the subject "than does an income approach which is not even partially based upon reality" (*Matter of River House-Bronxville v Hoffman,* 101 Misc 2d 422, 424, *supra*). Note was also taken of the statutory limitation pertaining to assessment of condominiums. The court declared (*Matter of River House-Bronxville v Hoffman,* 101 Misc 2d 422, 424-425, *supra*): "The petitioner urges that in view of section 339-y of the Real Property Law and *Matter of Marks v Pelcher* (58 AD2d 812) and the subsequent decision upon retrial by Mr. Justice FARLEY, reported in the *New York Law Journal* (June 14, 1978, p 16, col 4),

that the court must adopt an income approach to value. Subdivision 1 of section 339-y provides that with respect to condominiums, 'In no event shall the aggregate of the assessment of the units plus their common interests exceed the total valuation of the property were the property assessed as a parcel' ". The court then concluded that the statutory ceiling on condominium valuations did not apply to cooperatives and that the market data approach — with certain adjustments — could be used and the assessments sustained based on that method (*Matter of River House-Bronxville v Hoffman*, 101 Misc 2d 422, 425-426, *supra*): ¶ "First of all, this court holds that section 339-y of the Real Property Law does not apply to co-operative apartment buildings and *Matter of Marks v Pelcher* (*supra*) does not require condominium treatment for co-ops. ¶ "This court was concerned with using a market approach to valuing a co-op for the very reason referred to by Mr. Justice FARLEY in his decision upon the retrial of the *Marks* case, namely, the lack of a margin of profit to a prospective purchaser and the problems and expenses incurred in maintaining such property during a sell out. In the case now before the court, Mr. Albert's approach to value has made allowances for these items by discounting the values he found in his market approach by 20% to cover these items. The court finds from the record in this case that the Albert approach more accurately reflects the true market value of the subject property in keeping with the realities of the marketplace and without indulging in extensive speculation by valuing it under an income approach as an entity which it clearly is not, never has been, and probably will never be. ¶ " For all of the foregoing reasons, the court finds that the fair market value of the subject property during the years under review was that found by Mr. Albert under his market approach to value: for 1976, $3,346,700; for 1977, $3,496,400; and for 1978, $3,658,500. ¶ "Upon application of the stipulated equalization ratios for both the town and village to the afore-mentioned fair market values of the property as found by the court, the assessments on the subject River House for each of the years under review are sustained." ¶ On appeal this court reversed the judgment and order appealed from and remitted the matter for a hearing consistent with our memorandum decision (*Matter of River House-Bronxville v Gallaway*, 79 AD2d 990, *supra*). The remittitur was for the purpose of receiving further evidence on the issue of the percentage of discount to be taken for specified factors on the market data approach and also on the issue of the reproduction cost less depreciation ceiling on building value. Thereafter, in *Matter of 200 Country Club Assoc. v Board of Assessors* (83 AD2d 637), we expressly approved the market data method for valuing cooperatives. ¶ The hearing on the remittitur was held on October 19, 1981. ¶ After the hearing was closed and prior to the rendition of a decision by the trial court, the Legislature enacted a new section 581 of the Real Property Tax Law (L 1981, ch 1057, § 4, eff Dec. 3, 1981). Subdivision 1 of the statute provides, in pertinent part: "Notwithstanding any other provision of law, real property owned or leased by a cooperative corporation or on a condominium basis shall be assessed for purposes of this chapter at a sum not exceeding the assessment which would be placed upon such parcel were the parcel not owned or leased by a cooperative corporation or on a condominium basis". The trial court then had to reckon with the new statute because it was enacted after the close of the hearing but before the court rendered its decision. Its decision was rendered on April 29, 1982. In it the trial court held that: "Under the new statute therefore, condominiums and cooperative apartment buildings are to be assessed as if they were conventional apartment houses, the occupants of which are rent paying tenants. It has long been the law in New York that the preferred method of valuing such income producing properties is the income approach.

*People ex rel Parkin Operating Corp. v Miller,* 287 NY 126; *People ex rel Gale v Tax Commission,* 17 AD 2d 225. Thus it appears that the effect of the new statute is to reinstate the income approach as the preferred method of valuing cooperatives for assessment review purposes and to effectively overcome this Court's reliance upon the market data approach in this case. (See also the case of *Matter of 200 Country Club Associates v Board of Assessors,* 83 AD 2d 637)". The court further ruled that the new statute was applicable because: "Likewise, the Court of Appeals holdings in *Colt Industries,* and *Equitable* [54 NY2d 533] held that the new statute was applicable to proceedings pending on the date of the legislative override of the Governor's veto. Inasmuch as the Appellate Division chose to use the language 'judgment and order reversed' in its opinion on the Riverhouse appeal at 79 AD 2d 990, there is no judgment outstanding and when this matter was before this Court for the second time on the hearing, no judgment or order was effective, the matter was and is still pending and the new statute, therefore, is applicable and must be followed by this Court. (See 2 Carmody Wait 2d, Section 12.2, page 270)". Accordingly, the court adopted income-approach valuations — those of the expert for the appellants — and directed submission of a judgment applying stipulated equalization ratios to those income-approach fair market values. Subsequently, judgment was entered reducing the assessments for the three years in issue. ¶ We are of the opinion that the trial court was correct in applying the new statute and that the judgment should be affirmed. ¶ *Matter of Colt Inds. v Finance Administrator of City of N. Y.* (54 NY2d 533, 543), held with respect to those portions of the newly enacted statute (L 1981, ch 1057) governing admissibility of evidence in certiorari proceedings: "We hold that this new subdivision 3 now applies to these proceedings. Although the proceedings were commenced prior to the enactment of S-7000A, no evidentiary hearings have yet been held or interlocutory determinations made as was the case in *Matter of Slewett & Farber v Board of Assessors of County of Nassau* (54 NY2d 547 [decided herewith]). Accordingly, when such evidentiary hearings are held in these cases on remittal following this appeal, among other considerations to be taken into account in rulings with respect to the admissibility of evidence will be the provisions of new subdivision 3 of section 720" (see *Matter of Canigiani v Board of Assessors,* 98 AD2d 233). At bar, evidentiary hearings *had* been held prior to the enactment of the new statute, but the reference to *Matter of Slewett & Farber v Board of Assessors* (54 NY2d 547, *supra*) makes it apparent that nothing short of an interlocutory determination will vest rights under an evidentiary statute that has been replaced during the course of the litigation. Furthermore, *Colt* (*supra,* p 543), also held: "This new legislation contains no express provision for retroactive application as did the former law (L 1979, ch 126, § 4; L 1979, ch 127, § 3); it provides only, in section 17, that 'this act shall take effect immediately'. Accordingly to the extent that it is otherwise appropriate, it applies to proceedings pending on December 3, 1981". Although section 581 of the Real Property Tax Law took effect on December 3, 1981, the intent of the statute is made clear in the following excerpt from the memorandum submitted by the State Board of Equalization to the Legislature (Bill Jacket, L 1981, ch 1057): ¶ "A. *New Valuation Methodology* ¶ "The assessment of co-operatives, condominiums and 'rental property', would be governed by a new section 581 of the Real Property Tax Law. Subdivision one would require assessors to ignore the form of ownership of a co-operative or condominium in valuing such properties. The assessment would be limited to 'a sum not exceeding the assessment' which would have been made had there been no co-op or condominium ownership. ¶ "In part, this intended to reverse the trial court decision in *Matter of River House-Bronxville v. Gallaway,* 101 Misc. 2d 422, and the Appellate Division (2d Dept.) holding in *Matter of 200 Country*

*Club Associates* [83 AD2d 637]. In each case, the Court said it was not improper for the assessor to consider selling prices of shares of a co-operative apartment complex in determining the value of the co-op. We assume the effect of subdivision one would be to require the assessor to ignore these selling prices and to consider the income stream of similar, non-co-op, rental buildings". ¶ Accordingly, the judgment should be affirmed. Lazer, J. P., Bracken, Brown and Niehoff, JJ., concur.