OPINION OF THE COURT
Simons, J.
Plaintiff, owner of a four-family dwelling in the City of Rochester, commenced this action against the city, its assessor, the County of Monroe and the Rochester Pure Waters District, *251 seeking a declaratory judgment invalidating section 305 and article 19 of the Real Property Tax Law and an injunction preventing defendants from assessing, levying and collecting taxes pursuant to them. He claims that the statutes are unconstitutional because they deprive him of rights to due process and equal protection of the law and because article 19 represents an unconstitutional delegation of the Legislature’s taxing authority to local assessors. Plaintiff also challenges Rochester Local Law No. 6 of 1983, by which the city adopted the provisions of article 19, on the ground that pursuant to it his “non-homestead” property is taxed by Monroe County at a higher rate than “homestead” properties within and without the city and that it also results in his payment of higher county taxes than those paid by similar non-homestead properties in other parts of the county. Special Term denied plaintiff’s motion for an injunction and granted defendants’ cross motion for summary judgment declaring the challenged legislation constitutional. The Appellate Division affirmed and the matter is before us by right (see, CPLR 5601 [b]).
There should be a modification. Section 305 of the Real Property Tax Law is not void for vagueness in violation of constitutional due process notice requirements, and article 19 of that statute does not result in an unconstitutional delegation of legislative power. Article 19 and Rochester Local Law No. 6 of 1983 do, however, violate the equal protection clauses of the Federal and State Constitutions because they permit similarly situated properties to be taxed unequally.
I
It is helpful to place the challenged legislation in historical perspective. For over 200 years New York municipalities assessed real property at a fraction of full value notwithstanding the requirement of former section 306 of the Real Property Tax Law and its predecessors that it be assessed at its full value. The resulting assessments produced intraclass variations among similar properties in different locations and interclass variations among different types of properties. Because of the dramatic increase in the value of residential properties in recent years, without corresponding reassessments, residential properties gradually became assessed at a lower percentage of current market value than commercial properties and the burden of real property taxation shifted from owners of residential properties to owners of commercial properties.[1] A de facto dual system of *252 taxation developed, a system which was tolerated and justified by some because residential owners could not pass the expense of additional taxes along whereas commercial and industrial owners could.
In 1975, we held that section 306 of the Real Property Tax Law required that all property be assessed at full value and that fractional assessments were, therefore, invalid (Matter of Hellerstein v Assessor of Town of Islip (37 NY2d 1). The Legislature, recognizing that full value reassessment would produce a dramatic shift in the local property tax burden away from nonresidential property owners to residential property owners, repealed section 306 and added the legislation before us on this appeal, a new section 305 explicitly permitting fractional assessment at a uniform percentage of value and article 19 (L 1981, ch 1057). The provisions of article 19 permit a city or town which has undergone a revaluation of all its real property in compliance with standards imposed by the State Board of Equalization and Assessment to adopt a dual tax rate structure (Real Property Tax Law § 1901 [d]; § 1903). Rochester, acting pursuant to these statutory provisions, revalued its property, had the revaluation approved by the State Board of Equalization and Assessment and enacted Local Law No. 6 of 1983 adopting the provisions of article 19. Beginning with the 1984-1985 tax year, it divided all property in the city into homestead properties (Real Property Tax Law § 1901 [e] [1] [i]) and all others {id. [ii]) and taxed the two classes at different rates computed by using the statutory formulae.
Plaintiff instituted this action to challenge the tax imposed and asserted three causes of action. In the first, he alleged that the standard of assessment mandated by Real Property Tax Law § 305 “at a uniform percentage of value (fractional assessment)” is unconstitutionally vague because the word “value” as used in the statute could be construed to mean something other than full market value and because the statute does not specify a percentage or particular value at which property is to be assessed. In his second cause of action, he asserted that the statutory formula for calculating the homestead base proportion is an unconstitutional delegation of the legislative power to tax because the rate depends upon the roll prepared by the assessor in the year prior to revaluation. In his third cause of action, he claimed that application of article 19 to collect the county tax denies him equal protection of the law. Specifically, plaintiff alleged that there will be a higher county tax on non-homestead *253 properties than homestead properties in the city, and a higher county tax on non-homestead properties in the city than against identical non-homestead properties in assessing units located in Monroe County outside the City of Rochester.
IL
 Plaintiff’s first two causes of action were properly rejected by the courts below and do not require extensive discussion here. Real Property Tax Law § 305 is not impermissibly “vague” either because it permits assessments at less than full value or because it permits fractional assessments to be made without specifying a fraction. Due process requires only a reasonable degree of certainty so that individuals of ordinary intelligence are not forced to guess at the meaning of statutory terms (Connally v General Constr. Co., 269 US 385, 391; see generally, Note, The Void-for-Vagueness Doctrine in the Supreme Court, 109 U of Pa L Rev 67). Section 305 satisfies that standard because plaintiff has notice by established judicial construction of the term “value” that it means “market value” (see, Matter of Hellerstein v Assessor of Town of Islip, 37 NY2d 1, 10, supra; Stemmer v Board of Assessors, 97 AD2d 979) and because, even though the statute itself does not prescribe the uniform ratio by which all property is to be assessed, proof of such ratio is readily available in any certiorari proceeding based on valuation by use of the ratio found by the State Board of Equalization and Assessment (see, Real Property Tax Law § 720 [3] [b]; see also, Guth Realty v Gingold, 34 NY2d 440). Moreover, plaintiff received ample, albeit constructive, notice of the value relied upon in this case when the city reassessed all property on its rolls at the uniform rate of full value. Finally, to the extent that plaintiff’s first cause of action can be inferred to allege that the Constitution requires that all assessments must be made at full market value, it must also fail, because his property was assessed at full market value and because the former requirement of full value assessment was statutory, not constitutional (Matter of Hellerstein v Assessor of Town of Islip, 37 NY2d 1, supra).
Plaintiff’s further contention that article 19 constitutes an improper delegation of legislative authority to tax is similarly without merit. The article does not, by its terms or otherwise, permit local assessing units to set tax rates. Rather, the Legislature has delegated the authority to tax to local legislative bodies, as it may, to be exercised by them within prescribed discretionary limits (e.g., Matter of Small v Moss, 279 NY 288, 295). Once the local legislature adopts the statute, the assessor may classify property into residential and commercial classes by *254 partitioning them as they appeared on the previous years’ assessment rolls. The decision to adopt article 19, however, and the permissible options for varying the base proportions (Real Property Tax Law § 1903 [2] [b] [i], [ii]) remain matters entrusted to the local legislative body.
Ill
Plaintiff’s major complaint is the disparity in county taxes imposed upon homestead and non-homestead properties within the City of Rochester, and on his property and similar properties located outside the city. We agree that article 19 as applied in these circumstances results in invidious discrimination between non-homestead properties in Rochester and like properties in other parts of the county and denies plaintiff equal protection of the laws. Our analysis proceeds from a general review of real property assessment theory to the procedure implemented by adoption of article 19 and finally to the reasons for our conclusion that the challenged legislation is unconstitutional when applied because it impermissibly creates geographic classifications resulting in unequal tax treatment of similarly situated properties.
The integrity of any system of taxation, and particularly real property taxation, rests upon the premise that similarly situated taxpayers pay the same share of the tax burden (see, Johnson v Smith, 297 NY 165,170; see also, People ex rel. Hatch v Reardon, 184 NY 431, 445). Because real property taxes normally are computed by dividing the total assessed value of all real property subject to tax by the total levy of money which must be raised, thereby producing a tax rate, the taxes will be fairly borne under the usual practice if assessments are uniform and equal. This uniformity may be achieved not only by review of the property on the tax rolls by the assessors but also by property owners challenging their assessments for inequality in judicial proceedings pursuant to article 7 of the Real Property Tax Law.
The process is relatively simple when dealing with a tax levied by one assessing unit. It becomes aggravated when imposing county taxes, however, because assessments are the responsibility of local assessing units (Real Property Tax Law § 900 et seq.) and a county contains several such assessing units each with different assessors determining subjective value and each using different ratios of assessed value to full value. No matter how well intentioned the assessors, county-wide assessments may not be uniform or equal. Accordingly, the Constitution *255 requires that the Legislature provide for the “supervision, review and equalization of assessments” (NY Const, art XVI, § 2) so that each assessing unit bears its proportionate share of the county levy based upon its proportionate share of assessed valuation in the county. Thus, the county rate is computed for each assessing unit on the basis of assessments equalized pursuant to the provisions of article 8 of the Real Property Tax Law and. the tax is determined by applying adjusted rates to the individual assessments as found by the local assessors. If those units have different assessment ratios the taxes are harmonized by equalizing the ratios on a basis of full value and adjusting the rate accordingly. The rates may vary from unit to unit if the assessment ratio differs between them, but the proportionate share of taxes levied against the individual properties within the unit and payable to the county are generally consistent with the assessing unit’s proportionate share of assessed value of real property in the unit to the assessed value of the real property within the county and each property owner theoretically bears its fair share of the cost of government in relation to every other property owner in the taxing district.
Notwithstanding these methods for achieving theoretical uniformity, there was a good deal of slippage in the computations over the years and the dual system of taxation previously described developed. The ruling in Hellerstein required that all properties, residential and nonresidential, had to be reassessed at full value. Article 19 and section 305 were enacted to avoid that result and to permit local assessing units to institutionalize indefinitely the de facto dual system of taxation which existed. What had formerly been considered a single class, all real property subject to tax, may now be divided into two classes, homestead properties, defined as properties housing three or fewer families (Real Property Tax Law § 1901 [e] [1] [i]) and all others, denominated non-homestead properties (id. [ii]). An assessing unit electing to undertake an approved revaluation and to reassess each of its properties at full value (see, Real Property Tax Law § 1901 [i]) may apportion the tax levy unequally between the properties in these two classes by imposing a different rate on each class. The rates are computed by a method which continues allocating the share of government costs in the assessing unit in the same proportion as the owners in the two classes historically had paid (see, Real Property Tax Law § 1901 [Z]). Thus, if non-homestead property previously paid a greater proportionate share of the levy because of inequalities in assessments, as they uniformly did, article 19 creates a method to perpetuate that difference.
*256 The proportion of the levy imposed on each class is determined by the following formulae:
Assessed value of all homestead properties (the homestead base properties)
divided by
Total assessed value of all property in the assessing unit
and
Assessed value of all other properties (non-homestead base properties) divided by
Total assessed value of all property in the assessing unit. (Real Property Tax Law § 1901 [f], [g].)
The assessed values employed in the formulae are the assessed values actually appearing on the roll of the approved assessing unit the year before revaluation (Real Property Tax Law § 1901 [Z]; § 1903 [2]) and the shares of future taxes to be paid by each class are allocated according to the proportions determined by using the above ratios (id. § 1903 [3] [subject to relative minor adjustments permissible for homestead ratios, see, id. § 1903 (2) (b)]).
When the provisions of article 19 are applied in this case, the 1984-1985 tax rate in Rochester for non-homestead properties, based upon the prerevaluation share of the tax burden borne by the two classes of property, was almost twice the tax rate for homestead properties and these tax rates were applied to new, full value assessments. Thus, non-homestead property in Rochester, which comprises 52.46% of the total assessed value, paid 65.55% of the taxes levied by the city and by the County of Monroe on properties in the city. Homestead property, which comprises 47.54% of the total assessed value, paid only 34.45% of the total levies.
The Federal and State Constitutions do not prohibit dual tax rates or require that all taxpayers be treated the same. They require only that those similarly situated be treated uniformly. Thus, the creation of different classes for purposes of taxation is permissible as long as the classification is reasonable and the taxes imposed are uniform within the class (see, Shapiro v City of New York, 32 NY2d 96, 103-107, appeal dismissed 414 US 804; New York Steam Corp. v City of New York, 268 NY 137; People ex rel. Hatch v Reardon, 184 NY 431, supra; Matter of *257 McPherson, 104 NY 306; see, Lehnhausen v Lake Shore Auto Parts Co., 410 US 356). “[S]ubject to constitutional inhibitions, the Legislature has very nearly unconstrained authority in the design of taxing impositions” (Matter of Long Is. Light. Co. v State Tax Commn., 45 NY2d 529, 535; see also, Trump v Chu, 65 NY2d 20, 25). Indeed, the Supreme Court has held that even a State tax which has the effect of destroying a business must be sustained if it is not invidious. The remedy for an oppressive tax is political, not judicial (see, Magnano Co. v Hamilton, 292 US 40, 45). The classification violates constitutional equal protection guarantees, however, if the distinction between the classes is “palpably arbitrary” or amounts to “invidious discrimination” (see, Lehnhausen v Lake Shore Auto Parts Co., supra, at p 360; Shapiro v City of New York, supra, at p 103).
The classification of properties within the City of Rochester as homestead and non-homestead and the imposition of different tax rates on each is reasonable because arguably greater services may be required for non-homestead properties within the city than for homestead properties (cf. People ex rel. Kutner v Cullerton, 58 Ill 2d 266, 319 NE2d 55). The difficulty arises when county taxes are applied to non-homestead properties in the city and non-homestead properties which are located outside of the city. Although article 19 does not purport by its terms to create geographic classifications, such classifications result from its application because of the presence of several independent assessing units in the county-wide taxing unit, some of which have adopted article 19 and some of which have not. Though such geographic classifications are not per se prohibited (Matter of Colt Indus. v Finance Administrator, 54 NY2d 533, appeal dismissed sub nom. Equitable Life Assur. Socy. v Finance Admin., 459 US 983, and cases cited at p 544; Hess v Mullaney, 213 F2d 635, 639; Weissinger v Boswell, 330 F Supp 615, 623), when article 19 is applied in this case the taxes levied result in invidious discrimination between owners of similar properties in different assessing units.
Monroe County is taxing non-homestead property in Rochester at a higher rate than similar non-homestead properties outside of the City of Rochester simply because, under the provisions of article 19, Rochester imposes a higher share of the tax levy on non-homestead properties than do the other towns in the county. It does so by establishing rates which are artificial constructs based upon the statutory formulae. The resulting disparity in taxes imposed on Rochester and town properties cannot be equalized because the Rochester rate is not related to *258 the full or assessed value of the property or to any other countywide norm. It is based upon the proportionate share of the tax burden borne by properties within the city in the past and not upon the relative assessed values of properties in the two assessing units. The effective rate cannot be equalized after determining the shares of the levy to be raised in the various assessing units, as in the past, because the shares of the levy are apportioned to two classes of property in Rochester, each with a different rate, and to one class of property in the towns, taxed at a single rate wholly unrelated to the assessments or rates in Rochester. Moreover, uniform rates for homestead and non-homestead properties in the city and the towns could not be determined or “equalized”, even if a system for equalizing them existed, until and unless these various assessing units elect to adopt article 19 because the measuring assessment roll is not determined until after that election is made (Real Property Tax Law § 1901 [Z]). Inevitably then, as plaintiff contends, non-homestead property in the city will pay a higher county tax than similar property in other assessing units of Monroe County because the City of Rochester has elected to impose a higher tax rate on such properties whereas the other assessing units have not.
The inequities are magnified if one or more towns adopt a homestead base proportion determined by reference to the local town’s assessment roll of the preceding year.[2] The dual rate structure in such towns will inevitably differ from the dual rate structure in the city because the homestead base proportions in the various towns are not the same as those in the city; indeed they will not even be based on the same year’s assessment rolls. Although assessments for the towns electing article 19 will be established at 100% of the market value, as the statute mandates (Real Property Tax Law § 1902; 9 NYCRR 190-4.6), that becomes a meaningless exercise on a county-wide level because individual rates will be determined on the basis of a roll unrelated to rolls of other assessing units.
Before article 19, tax parity could be achieved by maintaining rough uniformity of the assessments county-wide through *259 equalization. Whatever the discrepancies, the property owner could challenge inequality within his assessing unit by proceedings pursuant to article 7 of the Real Property Tax Law and inequality in the equalization rate between his unit and others by a proceeding pursuant to article 8 of the Real Property Tax Law. There was thus a method, imperfect certainly but nevertheless a method, to try to equalize taxes for similar properties in the county. That solution no longer is available, however, because the “new” inequality is not the result of unequal assessments but of a variety of different rates throughout the county and because the 'authority to tax and the authority to fix the rate are in different hands the city taxpayer is left without a remedy. He may not successfully complain to county tax officials that his assessment or rate is too high because they have no power to correct or adjust either one. His complaint to the assessing unit will avail him nothing because all property is assessed equally at 100% and his rate is frozen, based upon a prerevaluation assessment roll. Finally, a political remedy is a remote possibility, at best, because it is unlikely that the city officials will change the rate or that officials of the largely residential towns will reassess the property or disturb a ratio in their assessing unit which places them at a distinct advantage over their city neighbors.
The Appellate Division concluded that homestead and non-homestead properties need not be taxed uniformly by the county as long as all properties in a given class within an assessing unit are treated uniformly. The effect of legislation must be viewed from the perspective of the taxing unit, the county, where the invalidity is manifested, however, not the perspective of the assessing unit. There is little satisfaction to city property owners in having a “fair” assessment if the common council authorizes imposition of a county tax rate on them higher than that of their neighbors in the next town owning similar property and receiving the same services. The Constitution mandates that assessments within the various assessing units must be equalized for taxation purposes (NY Const, art XVI, § 2; see also, 84 CJS, Taxation § 38) and if article 19 does not violate the letter of that provision, it surely violates its purpose and spirit by imposing unequal burdens upon similar properties in different geographic areas.
The city contends that there was a rational basis for enactment of article 19 because the Legislature acted to avoid uncertainty and disruption of municipal finances following the Heller-stein decision and that it intended by this legislation to main *260 tain the status quo and local control of assessments. Perpetuation of the status quo is not a legitimate end of government, however, if the status quo has been judicially found wanting (see, Matter of Hellerstein v Assessor of Town oflslip, 37 NY2d 1, 10-13, supra). Suffely local governments starting anew could not adopt the haphazard assessment system existing before the Hellerstein decision and there is no legitimate governmental purpose to be served by perpetuating it. Maintenance of local authority overtaxes also may be desirable, but it cannot justify the unequal treatment which results. As commendable as the Legislature’s desire for stability may be, it is not enough that it had a rational reason for enacting these statutes (see, Cumberland Coal Co. v Board of Revision, 284 US 23). There must also be a rational reason for deliberately imposing the demonstrably different tax burdens on similar properties because of their different geographic locations. Because no rational demographic basis for such a difference is suggested or apparent, the statute is unconstitutional (see, Weissinger v Boswell, 330 F Supp 615, supra; see also, McCarthy v Jones, 449 F Supp 480 [implementing Weissinger]; cf. Cumberland Coal Co. v Board of Revision, 284 US 23, supra).
Our decisions in Matter of Colt Indus. v Finance Administrator (54 NY2d 533, appeal dismissed sub nom. Equitable Life Assur. Socy. v Finance Admin., 459 US 983, supra) and Matter of Long Is. Light. Co. v State Tax Commn. (45 NY2d 529, supra) do not suggest otherwise. Article 19 does far more than permit a different method of proving value in different areas of the State, as did the statute in Colt Indus., or authorize a disparity in the method of computing the tax on property of a single taxpayer located in more than one county, as did the statute in the Long Is. Light, cases.
Although we are invalidating Local Law No. 6 and its application of article 19, the fact remains that the city relied upon the revenues derived from implementing it and would suffer an undue burden if it had to refund the taxes collected. Under such circumstances, we have held in the past that the invalidation of the statute will not be applied retroactively (see, Hurd v City of Buffalo, 41 AD2d 402, 404-405, affd 34 NY2d 628; see also, Lemon v Kurtzman, 411 US 192, 199; cf. Waldert v City of Rochester, 44 NY2d 831). That principle controls here and our decision does not permit recovery of taxes previously paid pursuant to the legislation for the 1984-1985 tax year now invalidated.
*261 Accordingly, the order of the Appellate Division should be modified, with costs to appellant, by declaring that Local Law No. 6 of 1983 and article 19 of the Real Property Tax Law are unconstitutional as applied, and as so modified, the order should be affirmed.

. The city concedes that in 1983 homestead property in the city was assessed an average of 11.7% of value while non-homestead property was assessed at approximately 20% of full value.

. In the case of Monroe County, disparate inequality of assessments from one assessing unit to another is graphically set forth by the assessor in his affidavit in opposition to plaintiff’s motion. For instance, commercial property in the Town of Hamlin was taxed at approximately two thirds the rate of residential property, while the relative tax rates against the two classes of property in the Town of Perintqn were reversed. Thus, if these towns adopted article 19, similar properties in Rochester and in each town would be taxed at different and irreconcilable rates even if the properties were subsequently assessed at 100% of full market value.