OPINION OF THE COURT
 

 Jones, J.
 

 We hold that the New York City mortgage recording tax;
 
 *533
 
 with respect to a mortgage covering real property located both within and without the city was properly determined by the State Tax Commission on the basis of the relative assessments of such property as they appeared on the respective assessment rolls, without adjustment for differences in equalization rates.
 

 On December 23, 1971 petitioner (LILCO) recorded in the Nassau County Clerk’s office a $50,000,000 supplemental indenture to a mortgage previously executed by it on its properties located in the Counties of Queens (within the City of New York), Nassau and Suffolk and paid a tax of $385,200, including $10,200 which it said represented the tax on the mortgage due to New York City under section 253-a of the Tax Law for that portion of the mortgaged premises in the city.
 
 *
 
 In determining this amount of the New York City mortgage recording tax, LILCO applied equalization rates to actual assessments.
 

 Thereafter, the State Tax Commission, pursuant to sections 253-a and 260 of the Tax Law, determined that the amount due the city was $29,714.82, using a ratio which employed the
 
 actual
 
 assessments on the last assessment rolls of the city property and of all the property covered by the mortgage. LILCO paid the deficiency of $19,514.82 thus found to be due, then applied for a refund of that amount. The State Tax Commission denied the refund. The Appellate Division annulled the commission’s determination and remitted the matter for further proceedings. We granted leave to appeal under CPLR 5602 (subd [a], par 2).
 

 The difference in the New York City mortgage recording tax as computed by LILCO and by the State Tax Commission was because the equalization rates (incorporated in LILCO’s computations) reflect the fact that the City of New York assesses property within its borders at a substantially higher fraction of actual value (67%) than do the other tax districts in which LILCO’s mortgaged property is located (varying from 14% to 31%). By applying the equalization rates to the tax roll assessments and thus theoretically eliminating the lack of uniformity in assessment practice, LILCO determined that its
 
 *534
 
 liability to the City of New York was 4.07% of the total tax computed on the face amount of the mortgage. The Tax Commission’s determination of the apportionment, based on the raw assessment roll figures, produced a liability on behalf of LILCO for 11.88% of the total tax.
 

 Anticipating the possibility that mortgages subject to New York City’s recording tax might cover property situated both inside and outside the city, the Legislature provided in section 253-a of the Tax Law: "3. Where the real property covered by the mortgage subject to the tax imposed pursuant to the authority of this section is situated in this state but within and without a city imposing such tax, the amount of such tax due and payable to such city shall be determined in a manner similar to that prescribed in the first paragraph of section two hundred sixty which concerns real property situated in two or more counties.” The first paragraph of section 260 of the Tax Law provides: "When the real property covered by a mortgage is situated in more than one tax district, the state tax commission shall apportion the tax paid on such mortgage between the respective tax districts upon the basis of the relative assessments of such real property as the same appear on the last assessment-rolls. If, however, the whole or any part of the property covered by such a mortgage is not assessed upon the last assessment-roll or rolls of the tax district or districts in which it is situated, or is so assessed, as a part of a larger tract, that the assessed value cannot be determined, or if improvements have been made to such an extent as materially to change the value of the property so assessed, the tax commission may require the local assessors in the respective tax districts, or the mortgagor, or mortgagee, to furnish sworn appraisals of the property in each tax district, and upon such appraisals shall determine the apportionment.
 
 If such mortgage covers real property in two or more counties, the tax commission shall determine the proportion of the tax which shall be paid by the recording officer who has received the same to the recording officers of the other counties in which are situated the tax districts entitled to share therein.
 
 When any recording officer shall pay any portion of a tax to the recording officer of another county, he shall forward with such tax a description sufficient to identify the mortgage on which the tax has been paid, and the recording officer receiving such tax shall note on the margin of the record of such mortgage the fact of such payment, attested by his signature. The tax
 
 *535
 
 commission shall make an order of determination and apportionment in respect to each such mortgage and file a certified copy thereof with the recording officer of each county in which a part of the mortgaged real property is situated.” (Emphasis added.)
 

 The italicized sentence is the only express reference in the paragraph to property situated in two or more counties— although the two following sentences are obviously amplifications of it — and it does not provide a method of apportionment. It is the first sentence of the paragraph which describes the method — viz., "upon the basis of the relative assessments of such real property as the same appear on the last assessment-rolls”. The parties differ as to the meaning to be ascribed to the quoted language. LILCO would stress the last sentence of section 260 of the Tax Law which provides: "In all cases under this section where the provisions for distribution of the tax among tax districts are inapplicable or inadequate, the tax commission shall establish a basis of apportionment that will be equitable and fair”. It argues that equality and fairness in the apportionment is required and, because the extent to which assessments reflect real value differs from tax district to tax district and county to county, the equalization rates must be applied to actual assessments before the determination of the New York City recording tax may be made. This argument was accepted by the Appellate Division.
 

 It first should be recognized that, subject to constitutional inhibitions, the Legislature has very nearly unconstrained authority in the design of taxing impositions. From another perspective, fairness and equity are not the principal criteria against which the validity of tax statutes is to be determined. Similarly, when equal protection claims are to be weighed the rule is elementary that in taxation, even more than in other fields, Legislatures possess the greatest freedom in classification
 
 (Shapiro v City of New York,
 
 32 NY2d 96, 103). Accordingly, it seldom suffices, and is often immaterial, in the resolution of tax controversies to demonstrate that in application a particular statute or regulation works even a flagrant unevenness. (Cf.
 
 Matter of Grace y New York State Tax Comm.,
 
 37 NY2d 193.) That a "fairer” taxing formula might have been adopted is of no moment. Indeed, in the application of tax statutes, unlike many other statutes, it cannot be assumed that when the Legislature designed the particular statute it had either a specific or even a general
 
 *536
 
 desire to achieve a fair or balanced formula. The objective may well have been the production or allocation of optimum revenue, and the particulars of the statute may have been responsive to that objective rather than to any other.
 

 Turning then to the present case we cannot conclude that there is any infirmity in the method employed by the State Tax Commission in apportioning the New York City mortgage recording tax. Indeed that method, whatever may be said of the wisdom or fairness of the legislatively prescribed formula, conforms literally to the mandate of section 253-a, i.e., that the determination shall be "in a manner similar to that prescribed in the first paragraph of section two hundred sixty”. That paragraph directs the commission to apportion the tax "between the respective tax districts
 
 upon the. basis of the relative assessments of such real property as the same appear on the last assessment rolls”
 
 when the real property covered by the mortgage is situated in more than one tax district. This is precisely what the commission did in this instance.
 

 Were there ambiguity or imprecision in the statute, a not unappealing argument could be made that it would be more fair, just and equitable to base apportionment on "equalized” assessments. Emphasis could be placed on the reliability and worth of the State-wide equalization rates (cf., e.g.,
 
 Guth Realty v Gingold,
 
 34 NY2d 440). It is to be noted, however, that the practice of fractional assessments long antedated the enactment in 1971 of section 253-a of the Tax Law authorizing imposition of the New York City mortgage recording tax, and that the process and coexistence of equalization rates were then firmly embedded in our tax structure. The Legislature could easily have provided for incorporation of the equalization concept in the determination of the recording tax if it had chosen to do so. It is not insignificant that the statutory language of the first and third sentences of the first paragraph of section 260 calling for apportionment on the basis of assessed values has been interpreted and applied in the 70 years that the mortgage tax law has been in effect, both before and after the enactment of section 253-a, as did the State Tax Commission in this instance. (See, e.g., Report of Atty Gen, 1909, p 547.) The statutory terminology has not been altered since first enacted in 1905, and must be taken to have the same meaning after the enactment of section 253-a as it had before that enactment.
 

 
 *537
 
 Again, the heavy reliance by LILCO on the quoted last sentence of section 260 is misplaced. It may be opined that, even under a most generous application of the doctrine that broad interpretive authority is generally accorded the agency responsible for the administration of a statute, this sentence would scarcely be sufficient warrant for the State Tax Commission, were it so minded, to adopt the position advanced by LILCO. Whatever the extent of the authority granted in the last sentence, it is conditioned on the earlier tax distribution provisions of the section being "inapplicable or inadequate”— neither branch of which condition would be met in this instance inasmuch as the earlier provisions of the first paragraph are both applicable and adequate. Moreover, as the city points out, the sentence relied on is not a part of the first paragraph of section 260 of the Tax Law — to which section 253-a of the Tax Law makes explicit reference, a circumstance which perhaps precludes all argument that this sentence is applicable to a determination of the New York City mortgage tax.
 

 For the reasons stated it cannot be concluded that the determination of the State Tax Commission in this case was arbitrary, unreasonable or otherwise invalid. Accordingly, the order of the Appellate Division should be reversed, with costs, and the determination of the commission confirmed.
 

 Chief Judge Breitel and Judges Jasen, Gabrielli, Wachtler, Fuchsberg and Cooke concur.
 

 Order reversed, etc.
 

 *
 

 Section 253-a authorizes the City of New York to impose a mortgage recording tax of 50 cents per $100 of principal obligation secured by a mortgage on property located within the city, which is independent of and additional to the mortgage recording tax imposed by section 253 of the Tax Law. The city imposed such a tax effective August 1, 1971 by the enactment of section W46-1.0 of the Administrative Code of the City of New York.