ROBERT A. STRANAHAN, JR., Petitioner, v NEW YORK STATE TAX COMMISSION, Respondent.

Third Department, May 24, 1979

**APPEARANCES OF COUNSEL**

*Shearman & Sterling (John T. Klug* and *Thomas P. Ford* of counsel), for petitioner.

*Robert Abrams, Attorney-General (Nigel G. Wright* and *Jeremiah Jochnowitz* of counsel), for respondent.

## OPINION OF THE COURT

MAIN, J.

The facts are not in dispute and, in part, have been substantially stipulated. Petitioner is the executor under the last will and testament of Barbara S. Holmyard who died at the Sloan Kettering Memorial Hospital in the City of New York on September 19, 1973. The decedent was a woman of substantial wealth. The Federal estate tax return filed by her executor showed a gross estate of $23,000,000. Prior to 1968 she had been domiciled in Darien, Connecticut. In 1968, she sold her Connecticut home and moved to Palm Beach, Florida, where she purchased a home and established her domicile. The home in Palm Beach was acquired for $325,000, and after her death was sold for $550,000.

On July 29, 1969, the decedent leased an apartment on the 9th floor at 45 East End Avenue in the City of New York at a monthly rental of $402.50. The value of decedent's furnishings in this apartment at the time of her death was $9,838.50. The apartment consisted of two and a half rooms, and the lease provided that it could be occupied only by Mrs. Holmyard. She used this apartment only occasionally, and, at most, for a few days at a time. Decedent made use of the apartment for brief shopping trips, as a stop-over place on trips to Europe and to attend dances sponsored by a social group named "The Dancers". The decedent maintained this apartment for her occasional visits to New York because she disliked staying in hotels.

In February of 1973, the decedent became ill while vacationing in Mexico. The decedent had a complicated medical history including treatment and an operation for cancer in 1966. The Sloan Kettering Memorial Hospital in New York City offered the most advanced facilities for treatment of her condition, and she came to New York on February 20, 1973 and was immediately hospitalized. She remained hospitalized until March 29 when she was discharged on a strict regimen of medication and treatment. Although she wanted to return to Florida, her doctors advised her not to go. She stayed at her New York City apartment until she was readmitted to the hospital on April 25, at which time she was unable to move without severe pain. She was again discharged from the hospital on June 19, and again her doctors turned down her requests to return to Florida advising her family and close friends that such a trip would be fatal. On July 27, 1973, she

was admitted to the hospital in a semicomatose condition. She died there on September 19, 1973. During 1973, the decedent spent a total of 215 days in New York State, of which she spent 148 days in the hospital and 67 days in her New York apartment.

A New York State income tax return was filed on April 9, 1974 for the taxable year 1973 and a tax in the sum of $81,153 was paid. On April 25, 1974 a claim for a refund was filed which was denied by notice of disallowance dated June 30, 1975. A petition for review of determination was filed on July 14, 1975 and, after a hearing held on January 27, 1977, the State Tax Commission rendered a decision on July 6, 1977 denying the petition and sustaining the notice of disallowance issued June 30, 1975 setting forth the following conclusions of law.

"A. That since Barbara S. Holmyard maintained a permanent place of abode in New York State in 1973 and spent more than 183 days in New York State that year, therefore, she was a statutory resident of New York State within the meaning and intent of section 605(a)(2) of the Tax Law and 20 NYCRR 102.2(e).

"B. That section 605(a)(2) of the Tax Law and the regulations promulgated thereunder do not provide for any exception to the 183 day rule where the days were involuntarily spent in New York State."

Petitioner contends that the decedent's apartment in New York was similar to a vacation cottage and under the Tax Law and the regulations did not constitute a permanent place of abode for income tax purposes (Tax Law, § 605, subd [a], par [2]; 20 NYCRR 102.2 [a], [e]).

Subdivision (a) of section 605 of the Tax Law, to the extent that it is pertinent, provides as follows:

"(a) Resident individual. A resident individual means an individual: * * *

"(2) who is not domiciled in this state but maintains a permanent place of abode in this state and spends in the aggregate more than one hundred eighty-three days of the taxable year in this state, unless such individual is in the armed forces of the United States during an induction period."

Subdivisions (a) and (e) of section 102.2 of title 20 of the

Official Compilation of Codes, Rules and Regulations of the State of New York provide:

"(a) *General.* An individual may be a resident of New York State for income tax purposes, and taxable as a resident, even though he would not be deemed a resident for other purposes. As used in these regulations, the term 'resident individual' includes * * * (2) any individual, other than a member of the armed forces of the United States during an induction period, who is not domiciled in this State but who maintains a permanent place of abode in the State and spends in the aggregate more than 183 days of the taxable year in the State. * * *

"(e) *Permanent place of abode.* A permanent place of abode means a dwelling place permanently maintained by the taxpayer, whether or not owned * * * or leased by his or her spouse. However, a mere camp or cottage, which is suitable and used only for vacations, is not a permanent place of abode. Also, a place of abode, whether in this State or elsewhere, is not deemed permanent if it is maintained only during a temporary stay for the accomplishment of a particular purpose."

Considering the facts herein, decedent's apartment was a permanent place of abode within the State. This apartment was suitable for other uses than vacations, although it might be used by a person of considerable means only for activities which might be considered vacation purposes. There is, therefore, substantial evidence for the determination by the State Tax Commission that this apartment constituted a permanent place of abode.

Petitioner asserts that the exemption of a member of the armed forces within the State under subdivision (a) of section 605 of the Tax Law, and the exemption of a place of abode maintained only during a temporary stay for the accomplishment of a particular purpose evidences a legislative and regulatory intent to avoid taxing foreign domiciliaries whose presence in New York State is involuntary. Petitioner contends that the decedent was detained in New York by her medical condition and her doctor's orders and was not here voluntarily and, therefore, was exempt from tax.

Respondent did not determine that decedent's presence in New York during the period in question was voluntary or involuntary, and, despite the fact that the stipulation before the Tax Commission stated that the decedent's presence in

New York was involuntary, respondent found that the Tax Law and regulations did not provide an exception for involuntary presence in the State.

The concept of involuntary presence in the State as distinguished from a voluntary presence in the State has no express statutory or regulatory basis. There is, however, no rational basis for a distinction between an employee domiciled in another State and assigned to the employer's office for a fixed and limited period for the accomplishment of a particular purpose, which may be for more than 183 days, and an individual domiciled in another State who comes into the State for the limited purpose of obtaining medical treatment and is prevented from leaving the State before the expiration of 183 days by reason of physical condition and her inability to return to Florida.

Mrs. Holmyard was terminally ill when she re-entered the hospital for the third and final time in a semicomatose state on July 27, 1973. She died on September 19, some 55 days later. Had she died in mid-August, the 183-day requirement would not have been met.

In our opinion, when a nondomiciliary seeks treatment in New York for a serious illness, the time spent in a medical facility for the treatment of that illness should not be counted in determining whether such a nondomiciliary was a resident of the State for income tax purposes during such confinement. Accordingly, the decedent was not subject to New York State income tax for the year 1973.

The determination should be annulled, without costs, and the matter remitted to the State Tax Commission for further proceedings not inconsistent herewith.

KANE, J. (concurring). While I agree with the majority that the present determination should be annulled, my reasons therefor differ. Rather than regard decedent's hospital stay as an implied exception to the statutory period of 183 days, it should be concluded instead that the statute was never intended to extend to a nondomiciliary forced to remain within this jurisdiction. The provision classifies as residents only those who have substantial New York contacts for both a permanent abode and lengthy personal presence are required. One without the other will not suffice as a basis for imposing income tax liability. This decedent voluntarily chose to enter New York in 1973 and, since the statute recognizes no distinc-

tion based on the reasons for such entry, except for certain military service, the entire period of her hospitalization was properly charged against the 183-day limit. The essential difference in this matter, as I view it, is the existence of uncontradicted evidence that decedent was unable to remove herself from this jurisdiction following her release from the hospital despite her wish to do so. It would be irrational for respondent to interpret the language of the statute so as to include those periods for the provision would then encompass what can only be fairly characterized as a "constructive" presence within this State. The statute plainly demands a more compelling predicate before tax liability attaches and it should be so construed given the unique circumstances of this case.

MAHONEY, P. J. (dissenting). Where a statute creates exemptions as to certain matters, under the principle of *expressio unius est exclusio alterius,* matters not mentioned are not within the exemption (McKinney's Cons Laws of NY, Book 1, Statutes, § 240; *Matter of Collins v National Aniline Div. Allied Chem. & Dye Corp.,* 8 AD2d 900; *Matter of Kroll v Clausen,* 74 NYS2d 21, affd 272 App Div 1005, affd 297 NY 698). Paragraph (2) of subdivision (a) of section 605 of the Tax Law imposes income tax liability on foreign domiciles who maintain a permanent place of abode within this State and spend in the aggregate more than 183 days of the taxable year in New York. The only designated exemption is for individuals in active service in the armed forces of the United States. Petitioner's decedent's involuntary stay in New York due to her illness does not come within the scope of the express exemption and, therefore, the tax must be assessed. Any inequity is for the Legislature to resolve.

It is true that the Tax Commission will not tax a foreign domiciliary who is assigned to his employer's New York office for a fixed limited period after which the employee returns to his foreign permanent location even if the time spent in New York exceeds 183 days of the taxable year (20 NYCRR 102.2 [e]). But this administrative construction of the statutory term "permanent place of abode" does not impose an exception beyond that delineated by the Legislature. It merely represents a reasonable construction of a term in the statute which the Tax Commission is charged with administering (Tax Law, § 171), not a usurpation of the authority to enlarge exemptions from tax. Because petitioner's decedent maintained an

apartment in New York, the determination that she had a permanent place of abode within this State is justifiable and, therefore, controlling. Reliance on subdivision (e) of section 102.2 of title 20 of the Official Compilation of Codes, Rules and Regulations of the State of New York to expand exemption from income tax imposed by section 605 of the Tax Law is, therefore, inappropriate.

Finally, even though it may seem unfair to tax petitioner's decedent in these circumstances, her maintenance of a New York apartment and her dwelling therein during the periods in which she was released from hospitalization, together with her use of medical services and facilities in New York, provide sufficient contacts with this State to support the imposition of tax.

Petitioner contends that decedent's time spent in New York was involuntary on her part and should not be counted in determining whether she was a resident of New York for tax purposes. However, neither the statute nor the regulations contain the exception which the petitioner claims for the "involuntary presence" in the State of the decedent.

In *Matter of Long Is. Light. Co. v State Tax Comm.* (45 NY2d 529, 535), the court stated: "It first should be recognized that, subject to constitutional inhibitions, the Legislature has very nearly unconstrained authority in the design of taxing impositions. From another perspective, fairness and equity are not the principal criteria against which the validity of tax statutes is to be determined. Similarly, when equal protection claims are to be weighed the rule is elementary that in taxation, even more than in other fields, legislatures possess the greatest freedom in classification *(Shapiro v City of New York,* 32 NY2d 96, 103). Accordingly, it seldom suffices, and is often immaterial, in the resolution of tax controversies to demonstrate that in application a particular statute or regulation works even a flagrant unevenness. (Cf. *Matter of Grace v New York State Tax Comm.,* 37 NY2d 193.)"

Tax deductions and exemptions depend upon clear statutory provisions therefor, and the burden is upon the taxpayer to establish a right to them *(Matter of Grace v State Tax Comm.,* 37 NY2d 193; *Matter of Central Off. Alarm Co. v State Tax Comm.,* 58 AD2d 162, mot for lv to app den 44 NY2d 642). Petitioner has failed to carry this burden. Moreover, the interpretation of a statute by the agency charged with the

statute's enforcement is entitled to great weight *(Matter of Howard v Wyman,* 28 NY2d 434).

The determination should be confirmed.

SWEENEY, J., concurs with MAIN, J.; KANE, J., concurs in a separate opinion; MAHONEY, P. J., and STALEY, JR., J., dissent and vote to confirm in an opinion by MAHONEY, P. J.

Determination annulled, without costs, and matter remitted to the State Tax Commission for further proceedings not inconsistent herewith.