DAVID A. FOSS, Appellant, v CITY OF ROCHESTER et al., Respondents, and ROBERT ABRAMS, as Attorney-General of the State of New York, Intervenor.

Fourth Department, November 7, 1984

**APPEARANCES OF COUNSEL**

*Harris, Beach, Wilcox, Rubin & Levey* (*Edward H. Fox* of counsel), for appellant.

*Louis N. Kash, Corporation Counsel* (*Susan Hauser* of counsel), for respondents.

*Robert Abrams, Attorney-General* (*William J. Kogan* of counsel), for intervenor.

*Dudley, Cantwell & McCale* (*Joseph McCale* of counsel), for Park-Brunswick Neighborhood Association, *amicus curiae*.

**OPINION OF THE COURT**

SCHNEPP, J.

In this declaratory judgment action plaintiff challenges the constitutionality of section 305 and article 19 of the Real Property Tax Law and appeals from the grant of summary judgment to defendants declaring the legislative enactments valid and constitutional. These statutes were embraced within chapter 1057 of the Laws of 1981 and were designed to eliminate the 1975 *Hellerstein (Matter of Hellerstein v Assessor of Town of Islip,* 37 NY2d 1) mandated reassessment of real property at full value and to alleviate the problems it posed to both local governments and taxpayers. The Legislature intended to "provide a high degree of stability in the relative tax burdens of taxpayers, particularly among classes of taxpayers" and to "provide * * * assessing units with the ability to avoid or decrease tax burden shifts to homeowners" which otherwise would result from reassessment (NY Legis Ann, 1981, p 546).

In *Hellerstein (supra)* the Court of Appeals held that the widespread and long-term practice throughout the State of making assessments on a percentage basis (fractional assessment) was directly contrary to the statutory requirement in section 306 of the Real Property Tax Law that all property should be assessed at full value. Municipalities throughout the State became subject to this direction. Although the only issue before the court was fractional assessment, the decision brought to the forefront the related issue of uniformity. In many municipalities

real property had not been reassessed for tax purposes in many years and existing assessments were out of date. As a result, with the rapid increase in value of residential property in recent years, this class of property was assessed generally at a lesser percentage of its current market value than commercial property. Thus, assessment practices over the years have caused a shifting in the burden of real property taxation from owners of residential properties to owners of commercial properties, causing the *de facto* classification of property in violation of the statutory standard of uniformity. The deviation became so universal that in 1975 the Temporary State Commission on State and Local Finances concluded: "The existence of *de jure* uniformity does not prevent the practice of *de facto* classification, and, in fact, every assessing jurisdiction contains 'classified' property", resulting in "wide variations in the percent of full value at which real property is assessed" (1975 Report of Temporary State Commission on State and Local Finances, vol 2 [The Real Property Tax], p 22). Without question, if all property were to be reassessed and taxed uniformly, there would be a dramatic shift in the local property tax burden away from the nonresidential class on to the residential class.

The rationale for chapter 1057 is the maintenance of the *status quo,* or more precisely, the avoidance of this tax shift. To accomplish this goal the Legislature (1) repealed section 306 of the Real Property Tax Law, which provided the statutory predicate for full-value assessment, (2) substituted in its place a new section 305 specifically permitting fractional assessment at a uniform percentage of value and (3) added to the Real Property Tax Law a new article 19[1] granting to local assessing units the option to allocate tax levies differently for properties classified as "homestead" and "non-homestead".[2] In order for article 19 to be implemented within an "assessing unit" the local legislative body must obtain certification from the State Board of Equalization and Assessment as an approved assessing unit (Real Property Tax Law, § 1902) and specifically adopt it (Real Property Tax Law, § 1903, subd 1). Such approval is conditioned upon revaluation of property within the unit (Real Property Tax Law, § 1902, subds 1, 2). The allocation of taxes by class (homestead

**1.** The Legislature also added a new article 18 which creates a somewhat different classification system for "special assessing units", i.e., assessing units with a population of 1,000,000 or more.

**2.** "Homestead" property is defined as all one-, two- or three-family dwelling residential real property (Real Property Tax Law, § 1901, subd [e]) and "non-homestead" means all other real property (Real Property Tax Law, § 1901, subd [p]).

and nonhomestead), which is the crux of article 19, is accomplished by splitting the taxes levied on all final assessment rolls according to the "homestead base proportion" established for the assessing unit. The homestead base proportion means the proportion of the taxable assessed value of property in the homestead class to the total assessed value of all property on the assessment roll completed in the year immediately preceding revaluation (Real Property Tax Law, § 1901, subds [f], [l], [b]). Under the statute the homestead base proportion applies not only to taxes levied by the assessing unit but also to county and school district levies (Real Property Tax Law, § 1903, subds 3, 4).

Plaintiff is the owner of a four-family dwelling in the City of Rochester classified as nonhomestead property under the statute (Real Property Tax Law, § 1901, subds [e], [p]). On August 9, 1983 the City Council of the City of Rochester enacted Local Law No. 6 of 1983 adopting the provisions of article 19 for use within the city (see Real Property Tax Law, § 1903, subd 1). It has also obtained contingent certification from the State Board of Equalization and Assessment as an "approved assessing unit," because of the revaluation of all real property within the city (see Real Property Tax Law, § 1902) which was completed in 1983. As a result of the revaluation, the city claims that all property within its boundaries is now assessed at a uniform percentage (100%) of full value. Pursuant to article 19, nonhomestead property in the city, which comprises 52.46% of the total assessed value, will be apportioned 65.55% of the taxes levied by the city and by the County of Monroe. Conversely, homestead property which makes up 47.54% of the total assessed value will be allocated 34.45% of the total taxes.[3] In the City of Rochester, the tax rate for nonhomestead properties will be between 1.75 and 2 times greater than the tax rate for homestead properties and in effect a dual tax rate structure has been established.

Plaintiff has alleged three causes of action challenging the constitutionality of section 305 and article 19. In his first cause of action plaintiff seeks to have the standard of assessment in section 305 which requires assessment of all real property in an assessing unit "at a uniform percentage of value (fractional assessment)" declared unconstitutionally vague for failure to set forth a percentage or to provide for assessment of property at

---

**3.** These proportions apply to the city's 1984-1985 tax levy and the county's 1985 tax levy. The 34.45% of the total taxes allocated to homestead properties was the amount of the tax levy borne by this class before revaluation and article 19.

any specific value. In his second cause of action, plaintiff challenges the statutory formula in article 19 for establishing the homestead base proportion as an unconstitutional delegation of legislative power to local assessors because the formula incorporates the assessment roll prepared by the assessor prior to revaluation. In his third and final cause of action, plaintiff opposes the application of article 19 to the county tax, claiming the statute does not require uniformity throughout the county but allows variation from one assessing unit to another and thus perpetuates pre-*Hellerstein* distinctions based solely upon geographical location which unconstitutionally deny plaintiff equal protection of the law.

On his first cause of action, plaintiff argues that section 305 of the Real Property Tax Law violates the due process clauses of the State and Federal Constitutions because it fails to provide taxpayers with notice of the fraction and of the theory of value to be employed by the assessor in the preparation of assessments. Plaintiff argues that the failure of the Legislature to specify the fraction to be used by local assessors renders the statute unconstitutionally vague by depriving him of a standard against which to compare his assessment and prevents him from discovering whether he has been assessed "unequally" without undertaking a considerable burden.

The statute provides: "All real property in each assessing unit shall be assessed at a uniform percentage of value" (Real Property Tax Law, § 305, subd 2). Plaintiff claims that the word "value" could be construed to mean something other than market value. His concern is unwarranted. In *Stemmer v Board of Assessors of Town of Pompey* (97 AD2d 979) we held that "[s]ection 305 is not unconstitutionally vague because 'value' means market value". Although in *Stemmer* we did not address the issue raised by plaintiff in this case whether fractional assessment without a specific fraction is unconstitutionally vague on due process grounds, we held that section 305 does not violate the equal protection clause because taxing jurisdictions are not bound to assess property at 100% of market value so long as all property in an assessing unit is assessed at a uniform percentage of value (97 AD2d 979, *supra,* citing *Sioux City Bridge v Dakota County,* 260 US 441).

■ Due process requires of a statute a reasonable degree of definiteness. "When it leaves the legislature, a statute must be complete in all its terms, and it must be definite and certain enough to enable every person, by reading the law, to know * * * how the law will operate when put into execution" (*Weissinger v Boswell,* 330 F Supp 615, 624; cf. *Connally v General Constr. Co.,*

269 US 385, 391). Section 305 is not void for vagueness for failure to mandate a specific fractional assessment so long as the fraction can easily be ascertained. The Legislature has delegated to local authorities the power to select the fraction subject to the requirement that it be at a "uniform percentage of value". Since all property within an assessment unit must be uniformly assessed at a common percentage of full value, which in the City of Rochester has been publicly declared to be 100%, the statute is reasonably definite on its face and, in any event, in this case it is valid as applied to plaintiff (see *Palmer v City of Euclid,* 402 US 544). While it is true that the omission of a prescribed fraction to guide assessors and property owners leaves unchanged the property owner's pre-*Hellerstein* burden of proof to discover whether his property has been erroneously or unequally assessed, administrative and judicial procedures exist to establish the prevailing percentage making its proof simple and inexpensive (see, e.g., Real Property Tax Law, § 720, subd 3; *Guth Realty v Gingold,* 34 NY2d 440; *860 Executive Towers v Board of Assessors of County of Nassau,* 53 AD2d 463, affd *sub nom. Matter of Pierre Pellaton Apts. v Board of Assessors of County of Nassau,* 43 NY2d 769). We know of no due process requirement that fractional assessment must be uniform Statewide.

On his second cause of action, the plaintiff seeks a declaration that the establishment of different tax rates for different classes of property was accomplished by an unconstitutional delegation of the Legislature's taxing authority to local assessors. Specifically, he contends that neither the Legislature nor local governing bodies have retained the authority to determine the tax rate for each class but instead the Legislature has delegated such authority indirectly to local assessors by making the determination of class tax rates a function of the homestead base proportion which is computed from the assessment roll for the year prior to revaluation (see Real Property Tax Law, § 1901, subds [f], [*l*]). This prior year's assessment roll, according to plaintiff, is based on random values as selected by the assessor and therefore the improper delegation, although indirect, infects the entire process.[4]

■ We begin our analysis of this contention with the observation that the Legislature could have delegated broad discretion

---

**4.** The city admits that in 1983 homestead property was assessed on the average at about 11.7% of value, while nonhomestead property was assessed at approximately 20% of the value, the difference being due to increasing market value of property in the city, particularly residential property without corresponding reassessments.

to local assessing units to determine tax rates for each class of property (see *Matter of Small v Moss,* 279 NY 288). In taxation, legislatures possess the greatest freedom in classification. (*Shapiro v City of New York,* 32 NY2d 96, 103.) "Accordingly, it seldom suffices, and is often immaterial, in the resolution of tax controversies to demonstrate that in application a particular statute or regulation works even a flagrant unevenness." (*Matter of Long Is. Light. Co. v State Tax Comm.,* 45 NY2d 529, 535.) Thus, the classification of property as homestead and nonhomestead was permissible (see *Lehnhausen v Lake Shore Auto Parts Co.,* 410 US 356; *Louisville & Nashville R. R. Co. v Public Serv. Comm.,* 493 F Supp 162, affd 631 F2d 426, cert den 450 US 959), and the Legislature was free to delegate to local assessing units the power to impose heavier burdens on nonhomestead property than had existed historically.

The Legislature's purpose, however, was to prevent a shift of the burden to the homestead class (NY Legis Ann, 1981, p 547). This purpose was effectuated through the homestead base proportion which, in effect, fixed the tax share of the nonhomestead class prior to revaluation as the maximum share allowed for that class. The Legislature did not delegate to local assessors the power to establish class tax rates; rather it determined for itself to adopt the historical tax burdens for each class as reflected in the assessment roll as a starting point for the establishment of future tax rates. This decision had a rational basis wholly apart from the assessors' role in creating the *de facto* classification of property into residential and commercial classes which article 19 was enacted to preserve.

In addition, the plaintiff has clearly ignored the framework of article 19 which delegates to local legislative bodies, not to the assessors, the discretion to adopt article 19 and, further, to adjust the proportion of taxes paid by each class. The local legislative body for an assessing unit may choose not to adopt article 19 and to allocate taxes uniformly. By adopting article 19, local legislative bodies may elect to legitimatize the prior year's assessment roll or to adjust it within the guidelines established by the Legislature.[5] Thus, article 19 delegates to the assessor no legislative authority at all.

Plaintiff's third cause of action is directed to the application of article 19 to the county tax levy and the crux of the challenge is

---

**5.** An assessing unit may vary the statutory proportions (homestead and nonhomestead) by 25%, 50% or 75% (Real Property Tax Law, § 1903, subd 2, par [b], cl [i]). We note also that an approved assessing unit is allowed to phase in, over a five-year period, the change in property assessments which attend revaluation (Real Property Tax Law, § 1904).

to the "homestead base proportion" established by section 1903.[6] Traditionally, the power to assess real property has been delegated to cities, towns and villages, but generally not to counties. The power to tax real property, however, has been granted to counties (see 1975 Report of Temporary State Commission on State and Local Finances, vol 2 [The Real Property Tax], pp 17-18). Because counties do not have their own assessors, the Real Property Tax Law provides that they shall base their taxes on the assessment rolls prepared by the city and town assessors (Real Property Tax Law, § 900).[7] The assessment roll of each city and town, at the time the county's warrant is annexed thereto, becomes the county tax roll which is then returned to the assessing unit for collection (Real Property Tax Law, § 904; see, e.g., Town Law, § 37). Revenues collected by towns and cities for county purposes are transferred to the county after collection. As the result of this system by which county taxes are allocated and collected on the basis of the town and city assessment rolls, the assessing practices which produced the *de facto* classification of property for town and city tax purposes had a similar effect on the apportionment of county taxes. This effect, which favored residential property owners, has become increasingly significant as county tax levies have increased and has been compounded by the wide variation in assessing practices among the assessing units within each county.

In order to maintain and legitimatize the pre-*Hellerstein* status quo in the distribution of county taxes, subdivision 4 of section 1903 of the Real Property Tax Law directs the chief fiscal officer in each county in which an assessing unit adopting article 19 is located to apportion to each class of property (homestead and nonhomestead) within that assessing unit a share of the county tax allocated to the assessing unit in accordance with the unit's homestead and nonhomestead base proportions or locally adjusted proportions. Of course, each class's share is then distributed within the class according to assessed value. The defendants admit that as a result of historical variations and assessing practices preserved by article 19 county

---

**6.** Although not presented for review on this case, the arguments concerning the allocation of the county tax levy and our conclusion that the Legislature's approach to this matter is constitutional apply equally to school district levies.

**7.** Initially, the county tax levy is allocated among all the assessing units in the county, i.e., towns and cities, in proportion to the full value of real property in each unit. The full value is determined by dividing the current assessed value by the equalization rate computed by the county equalization agency (see Real Property Tax Law, art 8). The use of an equalized value rather than an assessed value assures that the county tax levy is distributed uniformly among the assessing units.

taxes will not be apportioned uniformly on a county-wide basis. Rather, as a result of the Legislature's decision to continue to allocate county taxes through the medium of the local assessment roll, county taxes will be distributed unevenly in different assessing units of the county. Plaintiff contends that the application of county taxes by assessing unit lacks a rational basis and results in unconstitutional discrimination among owners of property within the city and owners of property of the same class and value located in the surrounding towns.

Plaintiff's argument that the proportion of county tax paid by nonhomestead property owners will vary between assessing units, and that properties in the same class with the same value will be taxed at different rates simply because they are in different assessing units, is not compelling. The Legislature has "very nearly unconstrained authority in the design of taxing impositions" (*Matter of Long Is. Light. Co. v State Tax Comm.,* 45 NY2d 529, 535, *supra*) and "may classify property for taxation; may set up different modes of assessment, valuation and collection; [and] may tax some kinds of property at higher rates than others", all without offense to the Constitution (*Nashville, Chattanooga & St. Louis Ry. v Browning,* 310 US 362, 368). Further, an equal protection challenge to a taxing statute will be reviewed under the "rational basis test" and the enactment must be upheld "unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [the court] can only conclude that the legislature's actions were irrational" (*Vance v Bradley,* 440 US 93, 97; see, also, *Matter of Slewett & Farber v Board of Assessors of County of Nassau,* 80 AD2d 186, 207, mod on other grounds 54 NY2d 547).

■ Plaintiff's claim of disparate treatment rests on his presumption that all taxes within a given tax district such as a county must be apportioned uniformly on the individual properties within the tax district. The tax system, however, allocates county taxes on the basis of the assessment rolls of cities and towns and leaves to the individual municipalities, which are in all cases governed by local legislative bodies, some discretion to determine the appropriate distribution of the property tax burden within the unit. Since all properties in a given class are treated uniformly within the assessing unit which is the relevant jurisdiction, the operation of article 19 does not deny equal protection of the law to a property owner.

The Legislature's purpose clearly reflected in article 19 to preserve the assessing unit as the primary political jurisdiction

for the assessment of property and the allocation of property taxes has a rational basis. The promotion of local control of taxation is a legitimate State interest and one to which the present system is reasonably related (see *Board of Educ. v Nyquist,* 57 NY2d 27, 44). Moreover, article 19 has as its primary purpose the avoidance of a sudden shift of the real property tax burden from commercial on to residential property (see NY Legis Ann, 1981, p 547). We hold that preserving the *status quo* is a legitimate basis for legislative action and supports the validity of article 19. The merits of this article are not before the court insofar as they relate to the wisdom of the legislation. "[P]erhaps another mechanism or formula may have been more well-suited to achieve the goals sought by the legislature. Whether the prescribed mode of taxation is wise, however, is not a matter before [the court]" (*United Illuminating Co. v City of New Haven,* 179 Conn 627, 649; citations and footnote omitted).

As a result of the city's adoption of article 19, the tax burden on properties of like class and value will not be uniform across the county but the mere fact of disparate treatment does not indicate unconstitutionality. Where there is a rational basis for differing treatment " '[e]qual protection does not require territorial uniformity of law' " (*Matter of Colt Inds. v Finance Administrator of City of N. Y.,* 54 NY2d 533, 544). In light of the State's traditional reliance on local assessing units to administer the property tax system, we hold article 19 does not deny any property owner equal protection of the law in the allocation of county taxes.

Accordingly, the judgment should be affirmed.

DOERR, J. P., BOOMER, GREEN and O'DONNELL, JJ., concur.

Judgment unanimously affirmed, without costs.