Chief Judge Wachtler
(dissenting in part). Although I completely agree with parts I and II of the majority opinion, I cannot subscribe to the conclusion that Local Law No. 6 and Real Property Tax Law article 19 are unconstitutional as applied. In reaching its conclusion, I believe the majority has turned its back on well-established principles used to review taxing legislation challenged upon equal protection grounds. In addition, its decision will require courts to examine all the possible incidental effects of such legislation, a task for which the judiciary is ill suited and one which, until today, it has not been called upon to perform.
In general, all real property within a district which both levies taxes and assesses property is assessed at a constant percentage of market value (Real Property Tax Law § 305 [2]; Matter of Hellerstein v Assessor of Town of Islip, 37 NY2d 1, remittitur amended 39 NY2d 920). The district tax burden, exacted by application of a uniform rate against such uniform assessments, will, in theory, result in each property’s paying an equitable share of the total tax burden.[1]
No constitutional right is trespassed if, as authorized by Real Property Tax Law § 1903 (2), (3), such taxing and assessing district adopts homestead and non-homestead base proportions and levies its taxes accordingly. The result of such election, again assuming assessment of all properties involved at a uniform percentage of market value, is that each property within one or the other of the two classes will pay an equitable share of the total tax burden of that class. However, the share paid by any property in one class will be disproportionate to the share paid by any property in the other class (an interclass disparity).
The incidental effect of the adoption of article 19 by one or more, but not all, of the assessing units in a taxing district comprising a plurality of assessing units is a disparity in share of tax burden paid by properties of equal value assessed at the same fraction of such value which would fall into the same *262 class.[2] The majority concedes that, but for this incidental intraclass disparity, article 19 is constitutional.
I do not agree with the majority’s assertion (majority opn, at p 259) that the legislative scheme at issue denies the taxpayer a remedy. The majority concedes that all taxpayers’ vehicles for challenging their assessments remain intact, but claims the inequality here must be viewed from the perspective of the taxing, rather than the assessing unit. The problem with such a change in perspective is that it also changes the nature of the problem. Assessment is a property-by-property determination, and irregularities in given cases can be challenged by the affected property owners and taxpayers. The intraclass variations viewed from the perspective of the taxing unit are not the result of such individualized, quasi-judicial determinations, but of generalized, legislative determinations applicable to all within each assessing! unit. The “remedy” for invocation of article 19 by an assessing unit clearly does exist, as it does in all such cases — at the ballot box.
Moreover, this incidental effect must be viewed in perspective. Even if the perpetuation of the intraclass disparity could be regarded as without rational basis were it the sole or primary objective of the statute, when viewed as what it is — an undesirable by-product of an otherwise permissible legislative attempt to solve a complex and long-standing problem — it should be able to withstand the extremely low level of scrutiny to which it must be subject.[3] It must also be remembered that Real Property Tax Law article 19 does not by its own terms impose any intraclass disparity upon anyone. The invocation of its provisions (and their necessary consequences) is left to the elected representatives of each assessing unit. Here, although the intraclass disparity appears in the county tax structure, it results from a conscious legislative determination by the City of Rochester that the achievement of the legitimate governmental objectives to which article 19 is, as the majority concedes, rationally related outweighs the incidental disadvantage to which *263 non-homestead property owners would be subject in the allocation of the county’s tax burden.
The majority’s suggestion that the intraclass disparity could easily be surgically removed from the effects of the statutory scheme by transferring the responsibility for assessments to the county, ignores the limited role of the judiciary in reviewing legislation, particularly taxing legislation, when challenged on equal protection grounds.
Our role in such cases is merely to determine whether, taken as a whole, such legislation bears a rational relation to the achievement of a legitimate governmental purpose (Board of Educ. v Nyquist, 57 NY2d 27, appeal dismissed 459 US 1138). That such legislation may, in whole or in part, result in “even a flagrant unevenness” is immaterial (Matter of Long Is. Light. Co. v State Tax Commn., 45 NY2d 529, 535), and legislatively drawn geographic distinctions in taxing legislation provide no basis upon which to sustain a constitutional challenge (Matter of Colt Indus. v Finance Administrator, 54 NY2d 533, 544, rearg denied 56 NY2d 646, appeal dismissed sub nom. Equitable Life Assur. Socy. v Finance Admin., 459 US 983). In striking down so much of article 19 as produces the intraclass disparity, the majority disregards the strong presumption of constitutionality all statutes enjoy, which may be overcome only by proof of unconstitutionality beyond a reasonable doubt (Lighthouse Shores v Town of Islip, 41 NY2d 7, 11-12), as well as the special deference with which the courts must review legislative judgments in the area of taxation (Board of Educ. v Nyquist, supra; Matter of Long Is. Light. Co. v State Tax Commn., supra).
By ignoring these well-established principles of judicial review, the majority today signals an unprecedented willingness on the part of this court to examine all the possible incidental effects of legislation challenged on constitutional grounds, a task we have declined to undertake in the past. In City of Rochester v West (164 NY 510, 514), we held “the validity of a statute or ordinance is not to be determined from its effect in a particular case, but upon its general purpose and its efficiency to effect that end” (see also, Lang’s Creamery v City of Niagara Falls, 224 App Div 483, 487, affd 251 NY 343; City of Rochester v Gutberlett, 211 NY 309, 316; 20 NY Jur 2d, Constitutional Law, § 70, at 139). In a situation involving a statutory prohibition of what were legislatively perceived to be unhealthy work practices, we declined to examine whether, as an incidental effect of the legislation, some unobjectionable practices would be prohibited as well, holding: “A legislature must legislate in general *264 terms, and its mandates are not constitutionally vulnerable because having power to act concerning a certain subject and to legislate in' terms reasonably calculated to accomplish the general purpose within the scope of its authority, it covers and prohibits some isolated transaction which by itself would be harmless and unobjectionable” (People v Schweinler Press, 214 NY 395, 407, appeal dismissed 242 US 618; emphasis added).
The result of this unprecedented scrutiny would be an unwarranted, and I believe unconstitutional, usurpation of the Legislature’s authority to act in the area of taxation, an area in which it, not the judiciary, possesses the necessary expertness and accountability to the public which in the end are far more effective than overly oppressive judicial oversight to assure fairness in the levying and exaction of taxes.
Judges Meyer, Kaye and Titone concur with Judge Simons; Chief Judge Wachtler dissents in part and votes to affirm in a separate opinion in which Judges Jasen and Alexander concur.
Order modified, with costs to appellant, in accordance with the opinion herein and, as so modified, affirmed.

. Any taxpayer who believes his property has been overassessed by reason of overvaluation, employment of an illegal method of valuation, or application of a different percentage of market value than other properties in the assessing district can challenge such assessment pursuant to Real Property Tax Law article 7.

. Before the adjustments mandated by article 19 are applied to such local assessment rolls, the ratios, or proportions of assessed to actual market value, of all districts are equalized pursuant to Real Property Tax Law article 8.

. The legislative history of article 19 supports such a conclusion. The legislative memorandum in support of the bill comprising, inter alia, article 19 states: “The bill is primarily designed to assure stability in the administration of the property tax at a time when widespread taxpayer fear and uncertainty threaten the viability of the tax, the keystone of the State/local tax structure. Accordingly, it is drawn narrowly, and addresses only those problems the solutions of which are essential to assuring stability.” (1981 NY Legis Ann, at 547.)